**DILLINGHAM TRANSPORTATION BUILDING, Limited,**

v.

**The UNITED STATES.**

**No. 110-52.**

United States Court of Claims.
Jan. 16, 1957.

N. Barr Miller, Washington, D. C., F. Eberhart Haynes, Haynes & Miller, J. Marvin Haynes, Oscar L. Tyree, Joseph H. Sheppard, Washington, D. C., Smith, Wild, Beebe & Cades, and J. Russell Cades, Honolulu, Hawaii, on the briefs, for plaintiff.

Gilbert E. Andrews, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, John W. Hussey, and Anthony T. Dealy, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for a refund of income taxes paid by it for the years 1946 and 1947. It claims that it was, in those years, a corporation organized and operated exclusively for charitable purposes, and was, therefore, exempt from income tax under section 101(6) of the Internal Revenue Code of 1939, 26 U.S.C. § 101(6).

The plaintiff was organized in Hawaii in 1929 as a business corporation, authorized by its Articles of Association to acquire land, erect office buildings, stores, garage buildings, service stations, to own, lease, operate and maintain office buildings, store buildings and lease them or space in them to others, and to operate a garage for the repair of automobiles and the sale of accessories.

The plaintiff operated in accordance with its Articles of Association and for the profit of its stockholders. But in 1945 the Kauikeolani Children's Hospital acquired, by direct gift, or by purchase with funds donated to it, all the stock of the plaintiff. In the same year the Hospital acquired also all of the plaintiff's outstanding indebtedness, consisting of a first mortgage and a second mortgage.

The Hospital is admittedly a nonprofit tax-exempt organization for the treatment of diseased, deformed, or injured children. It received its revenue from pay or part pay from patients, from contributions by the City and County of Honolulu, from investments and endowment funds, and from donations.

When the Hospital acquired all the stock of the plaintiff corporation, it elected a board of directors consisting entirely of trustees of the Hospital, and during the tax years in question all of the directors and officers of the plaintiff were also officers and trustees of the Hospital. The plaintiff's activity during those years was the rental of space in an office building in Honolulu owned by it and the operation of a parking and service garage in the building for the convenience of the tenants.

From the time that the Hospital acquired ownership and control of the plaintiff in 1945, the plaintiff, although it had an earned surplus of some $60,000 at the end of 1946, and some $95,000 at the end of 1947, made no distribution to its stockholder, the Hospital, until 1950, when it distributed $196,996.59 to the Hospital.

■ The question at issue in this case is a narrow one. It is whether the plaintiff and its activities complied with the description of a tax-exempt corporation contained in section 101(6) of the Internal Revenue Code of 1939. That section grants exemption to, among others,

"Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. For loss of exemption under certain circumstances, see sections 3813 and 3814;"

The Government says that the plaintiff did not satisfy the requirement that it be a corporation *organized* as well as operated exclusively for charitable purposes. It points out that the plaintiff was organized, that is, formed, in 1929 as a business corporation to make money for its stockholders, who were private individuals. It says that unless its corporate purpose was changed by at least an amendment of its charter stating that its earnings must go to charity it cannot be said to have been organized for a charitable purpose.

The plaintiff seeks to bring itself into compliance with the statutory definition by pointing to the reorganization of the board of directors and the roster of of-

ficers of the plaintiff, filling all those positions with persons who were trustees of the Hospital which owned the stock. It says, correctly, that the duty of those directors and officers was to operate the plaintiff's business for the sole benefit of the owning charity, the Hospital.

In construing and applying section 101 (6) we must decide what policy Congress had in mind when it wrote the expression "organized and operated." We have not been able to think of any important policy which would be served by giving a strict interpretation to the word "organized" in the statute, limiting its inclusion to expressions in the original corporate charter, or to formal amendments to the charter. Nowhere that we are aware of has there been any attempt to state a reason why Congress would have thought such formalities important. If we do not adhere to that limited definition of the word "organized", we see no reason why a corporation is not organized for charitable purposes if a definitely charitable legal entity has acquired all of its stock and debts, and has placed its trustees in all the positions of control in the corporation. That is the way the corporation is in fact set up, or organized, at the time, for all practical purposes.

Congress, having in 1950, removed the exemption from "feeder organizations" such as the plaintiff which carried on a business for profit, even though the profit went to charity, in 1951, by section 601 of the Revenue Act of that year, 65 Stat. 452, 562, amended the Revenue Act of 1950 by adding subsection (d) to section 302, 26 U.S.C.A.Int.Rev.Acts, thereby providing that such organizations whose earnings inured to educational institutions or hospitals, should still have their exemptions for the years prior to 1951. In the new subsection (d) Congress used the expression "an *organization operated* for the primary purpose*", etc. Here Congress did not place any requirement that the entity be *organized* for any particular purpose, although it was talking about some of the entities to which section 101(6) was applicable. We think this is some evidence that Congress did not regard the word "organized" in section 101(6) as stating a narrowly limited formal requirement.

We recognize that there are decisions which take a position opposite to ours on this question. The Court of Appeals for the Second Circuit did so in Sun-Herald Corporation v. Duggan, 73 F.2d 298, certiorari denied 294 U.S. 719, 55 S. Ct. 546, 79 L.Ed. 1251, and in a case with the same style involving later years, 160 F.2d 475. In Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776, that court held that an original intention to organize a corporation for charitable purposes could be shown by extraneous evidence, though it was not apparent from the corporate charter. Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451, put the burden upon the taxpayer of showing, either by the corporate charter or by extraneous evidence, that the original purpose of the organizers or incorporators was a charitable one.

■ Our conclusion is that a corporation satisfies the requirement of being "organized" for a charitable purpose if, at the time in question, its setup or organization of ownership, directors, and officers is such that its earnings must inure to a charity.

The defendant's motion for a summary judgment is denied, and the plaintiff's similar motion is granted. The plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of the recovery will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.