**VETERANS FOUNDATION, a non-profit corporation, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**No. C–40–59.**

United States District Court
D. Utah.
Central Division.

Oct. 21, 1959.

Gaylen S. Young, Salt Lake City, Utah, for plaintiff.

A. Pratt Kesler, U. S. Atty., for the District of Utah, Salt Lake City, Utah, Jack F. Blair, and Harold S. Larsen, Attys. Tax Division, Dept. of Justice, Washington, D. C., for defendant (Howard A. Heffron, Acting Asst. Atty. Gen., James P. Garland, Carrington Williams, Attorneys, Dept. of Justice, Washington, D. C., with them on brief).

CHRISTENSON, District Judge.

In an action for the recovery of internal revenue taxes alleged to have been illegally assessed, the plaintiff Veterans Foundation claims to be a social welfare organization exempt under 26 U.S.C.A. § 501(c)(4) [1]. In opposition, the Gov-

---

1. "501. Exemptions from tax on corporations, certain trusts, etc.

    \*      \*      \*      \*      \*

"(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

    \*      \*      \*      \*      \*

"(4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the

ernment asserts that plaintiff is an organization not operated exclusively for the promotion of social welfare and therefore not exempt under this provision. The Government further contends that, notwithstanding payment of its net profits to an exempt organization, plaintiff itself is an organization "operated for the primary purpose of carrying on a trade or business for profit" and is by 26 U.S.C.A. § 502 [2] specifically precluded from exemption under section 501.

The Court adopts by reference the stipulation of facts set out in the pre-trial order as findings of fact herein and, with respect to contested issues of fact reserved in the pre-trial order, further finds from the evidence adduced by the respective parties at the trial before the Court that:

1. The $90,000 reserved in the contract between Orlo L. Ellison and the plaintiff for the purchase of the salvage business operated by Mr. Ellison was a good-faith consideration bearing reasonable relation to the value of the property received.

2. That the amount of the consideration allocated to good will was a good-faith allocation bearing reasonable relation to the value of the good will transferred.

3. That the net earnings of the plaintiff were contributed exclusively to charitable, educational or recreational purposes, to-wit: to the activities of the Utah Department of the Disabled American Veterans, a separate corporation.

Briefly stated, the stipulated and found facts in sum are these:

Plaintiff foundation, though organized under the laws of the State of Utah as a "non-profit corporation", operates as its primary, if not sole, activity two "Veterans' Thrift Stores" which resell to the public or other secondhand retail outlets used goods of various kinds, including clothing, furniture and appliances, which have been donated by the public on solicitation of the plaintiff with the cooperation of the Utah Department of Disabled American Veterans. The profits of this business, other than those devoted to paying off the price owed for the purchase of the business from its original organizer, are contributed to the sponsoring organization. The only other charitable aspects of plaintiff's activity is that from time to time it donates to worthy veterans, on recommendation of DAV authorities, clothing and other articles in amounts totaling perhaps ten per cent of its income.

The business was purchased from one Orlo L. Ellison, who had operated it originally as a private business under contract with the Utah Department of the Disabled American Veterans. In consideration of the use of the name of the Disabled American Veterans in making solicitation of used goods and in reselling them Ellison had contributed a percentage of his profits to the state organization, retaining the balance for his own benefit.

We may first reject certain circumstances as not being of determinative significance.

■ Although plaintiff is organized under the non-profit corporation provisions of the Utah statutes, Utah Code Annotated 1953, Title 16, Chapter 6, and its articles of incorporation recite that the funds raised are to be spent for charitable purposes, this is not dispositive of the problem, which must be determined not merely from an examination of the

employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes."

2. "502. Feeder organizations
"An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501 from taxation. For purposes of this section, the term 'trade or business' shall not include the rental by an organization of its real property (including personal property leased with the real property). Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 166."

certificate of incorporation but on the basis of the actual objects motivating the organization, its subsequent activities and all other relevant factors.

On the other hand, the fact that part of the profits earned by plaintiff after it bought the business were devoted to payment of the purchase price to Ellison does not establish that the profits of the business inured to the benefit of a private individual so as to destroy any right to exemption which might otherwise apply. Ohio Furnace Co. v. Commissioner, 1955, 25 T.C. 179; Knapp Brothers Shoe Mfg. Corp. v. United States, 1956, 142 F.Supp. 899, 135 Ct.Cl. 797.

Plaintiff has laid great stress upon the organization and activity of the Disabled American Veterans. There seems little doubt that the Utah Department of the Disabled American Veterans could qualify for exemption under section 501(c)(4), or possibly under section 501(c)(3). See 6 Mertens, Law of Federal Income Taxation, § 34.18, ch. 34, p. 81, listing among organizations exempt under 501(c)(4), the following: American Legion, Military Training Camps Association and the Navy and Marine Memorial Association. But regardless of how closely plaintiff may be affiliated with the Disabled American Veterans we are concerned here not with the latter but with a subsidiary organization. (However, some question may be raised as to the assumed close relationship between them in view of recent litigation in the state courts. See Disabled American Veterans, Utah State Dept. v. Hendrixson, 9 Utah 2d 152, 340 P.2d 416.)

The plaintiff of necessity has had to premise its principal claim to exemption upon the argument that its net income is donated to the Disabled American Veterans. The difficulty with this position is that the "ultimate destination of income test" has been rejected in recent applicable legislation. This doctrine apparently had its roots in Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578, 44 S.Ct. 204, 66 L.Ed. 458. It was applied in Roche's Beach, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1938, 96 F.2d

776 and C. F. Mueller Co. v. Commissioner of Internal Revenue, 3 Cir., 1951, 190 F.2d 120. At least one of the circuits questioned the doctrine, accepting Judge Learned Hand's dissent in the Roche case as the correct statement of the law. United States v. Community Services, 4 Cir., 1951, 189 F.2d 421, certiorari denied 342 U.S. 932, 72 S.Ct. 375, 96 L.Ed. 694. Notwithstanding previous case law, however, it seems that the plaintiff organization must now stand on its own feet in seeking exemption. The legislation covering taxation of feeder organizations (section 502) and unrelated business activities (sections 511 and 515) has resolved the conflict that previously existed. Plaintiff has cited a number of cases that are no longer applicable in light of the 1950 enactments. Roche's Beach, Inc. v. Commissioner of Internal Revenue, supra; Willingham v. Home Oil Mill, 5 Cir., 1950, 181 F.2d 9, certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624; C. F. Mueller Co. v. Commissioner of Internal Revenue, supra; Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F.2d 483; Ohio Furnace Co. v. Commissioner, supra; Consumer-Farmer Milk Co-op. v. Commissioner of Int. R., 2 Cir., 1950, 186 F.2d 68, certiorari denied 341 U.S. 931, 71 S.Ct. 803, 95 L.Ed. 1360, are all in this category.

Dillingham Transportation Building v. United States, 1957, 146 F.Supp. 953, at page 955, 137 Ct.Cl. 389, is not authority for the proposition advanced by plaintiff, as the court specifically recognized that in 1950 Congress " * * * removed the exemption from 'feeder organizations' such as the plaintiff which carried on a business for profit, even though the profit went to charity * * " but decided the case on the basis of a special exception for such profits earned by certain charities prior to 1951 granted by section 601 of the Revenue Act of 1951. As to the Roche's Beach case, supra, on which great stress is laid, this seems to be the type of case, as were the Willingham and C. F. Mueller cases cited above, at which section 502 directly was aimed. H.Rep.No.2319, 81st Cong., 2d

Sess., p. 124; (1950–2 Cum.Bull. 380, 469). Hospital Bureau of Standards and Supplies, Inc. v. United States, Ct.Cl. 1958, 158 F.Supp. 560, 563; Forest Press, Inc. v. Commissioner, 22 T.C. 265 and Squire v. Students Book Corp., 9 Cir., 1951, 191 F.2d 1018, are authority for the proposition that the fact " * * * that the taxpayer claiming an exemption realizes a profit during the taxable year is not sufficient in itself for disallowing the exemption." The court in the Hospital Bureau case, supra, 158 F.Supp. at page 563, however, did recognize that "Whether the plaintiff loses its exemption as a result of the 'feeder organization' amendment * * * " involved a question of fact. The court specifically recognized that it was "not dealing with a business carried on for profit, with the profit directed to charity" and felt compelled on the facts of the case to hold that plaintiff was not operating for the primary purpose of carrying on a trade or business for profit.

Thus, we are led back to the basic question posed by section 502 of whether plaintiff in this case is "an organization operated for the primary purpose of carrying on a trade or business for profit" (without reference to the ultimate destination of its income) and hence, not exempt by the express terms of the statute.

■ An operation for the *primary* purpose of profit need not be *solely* for profit. But it must be conceded, having in mind the congressional fiat that the destination of profits is now irrelevant, though some occasional contributions are made to recommended individual veterans, plaintiff's primary function is to earn profit for the Disabled American Veterans. In the Hospital and Students Book cases the court was able to find a "close and intimate relationship" to the functioning of a tax exempt organization. Plaintiff in the instant case does perform a service that the Disabled American Veterans would have to do itself if it chose to accept donations of used goods—selling the goods to convert them into profit. But, aside from this,

there is no close and intimate relationship to the functioning of the Disabled American Veterans. That the merchandise is donated rather than purchased at wholesale merely lays a basis for increased profits rather than to provide the indicia of charity. The ultimate destination of these profits does not detract from the obvious fact that the primary purpose is profit. In the Hospital case the plaintiff performed highly specialized services for the member hospitals.

At the time Congress denied tax exemption to businesses merely because all income inured directly to the benefit of an exempt organization (§ 502), it also taxed "unrelated business" income of most charitable organizations themselves (§§ 511–515). This suggests a harmonious picture. Merely because the charity carried on the unrelated business that would otherwise get taxed under section 502 if conducted by a separate organization did not mean that business escaped taxation. It is interesting to note that the determination of whether an activity is an "unrelated business" (§ 511), and organization "operated exclusively for * * * charitable * * purposes" (§ 501(c)(3)), "not organized for profit but operated exclusively for the promotion of social welfare" (§ 501 (c)(4)) or "operated for the primary purpose of carrying on a trade or business for profit" (§ 502) involves an examination of similar facts. These terms are dovetailed in their meaning and a determination of one logically would appear to be conclusive of the others. A subsidiary organization "is not exempt from tax if it is operated for the primary purpose of carrying on a trade or business which would be an unrelated trade or business (that is, unrelated to exempt activities) if regularly carried on by the parent organization." U.S.Treas.Regulation, § 1.502–1(b).

However, the picture is not as clear and harmonious as might be expected. First, it should be noted that the unrelated business activities tax specifically does not apply to section 501(c)(4) organizations (§ 511(a)(2)) and even if

it did, section 513(a)(3) excludes from the unrelated business activities tax "any trade or business * * * which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions." See also 6 Mertens, Law of Federal Income Taxation, ch. 34, p. 80. So we are confronted with the proposition that if this business were carried on directly by the Disabled American Veterans, an organization which apparently would qualify for exemption under section 501(c)(4), the income would not be taxable.

 If there had been a similar exclusion to the application of section 502, that is, if, in addition to specifying that the rental of property should be excluded, section 502 had provided that the term "trade or business" shall not be deemed to include "any trade or business * * which is the selling of merchandise, substantially all of which has been received by the organizations as gifts or contributions", the result of this case necessarily would be different. Should this type of business activity, where the proceeds are paid entirely to a tax exempt organization that would not pay the tax if it conducted the business, be taxed merely because handled by a subordinate unit? Congress has rather definitely said "Yes". It could have included, but chose not to include, in section 502 the exclusion mentioned above, and it made that omission more pointed and significant in specifically excluding from the contemplation of section 502 rental income and by specifically excluding from the unrelated business activity tax in section 513(a)(3) the type of business plaintiff thinks should have been excluded from the operation of section 502. Congress patently knew how to provide the exclusion from section 502 had it wanted to. It did not do so. There appears to be no way to avoid the conclusion that plaintiff cannot be considered an organization not organized for profit but operated exclusively for the promotion of social welfare and that it is "operated for the primary purpose of carry-

ing on a trade or business for profit" and is therefore subject to tax.

The profits earned by plaintiff are spent in furtherance of the social welfare of an honored and important segment of our society. Its business is a worthy one. But this Court is controlled by the law which indicates to it that plaintiff is an organization operated for the primary purpose of carrying on a trade or business for profit, and the fact that its income is given to another organization for charitable purposes does not exempt it from payment of tax. Judgment, therefore, will be entered in favor of the Government and against the plaintiff "no cause of action".