**WELLS & WADE, INC.**

v.

**UNITED STATES.**

**WELLS & WADE FRUIT CO.**

v.

**UNITED STATES.**

Nos. 353–58, 354–58.

United States Court of Claims.

July 15, 1960.

N. Barr Miller, Washington, D. C., J. Marvin Haynes, Oscar L. Tyree, Joseph H. Sheppard, Washington, D. C., and MacBride, Matthews & Hanify, Seattle, Wash., on the briefs, for plaintiffs.

H. S. Fessenden, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

Each of the plaintiffs is seeking to recover Federal income taxes paid for the period January 9, 1950, to and including December 31, 1950. Since the legal issues involved are identical and the only factual difference is in the names of the respective plaintiffs, the two cases will be dealt with in a single opinion. The primary question presented here is whether the earnings of the plaintiff corporations for the period January 9, 1950, through December 31, 1950, inured solely to the benefit of a charitable organization and are exempt from Federal income taxation under § 101(6) of the Internal Revenue Code of 1939.[1]

Wells & Wade, Inc., was organized in 1915 by A. Z. Wells and J. M. Wade, to engage in the hardware business in Wenatchee, Washington. In 1917, these two men organized Wells & Wade Fruit Company as a business corporation to engage in the production and marketing of fruits raised in the Wenatchee District. This joint ownership of the two plaintiff corporations continued until 1937 when A. Z. Wells and his wife, Emogene, purchased the entire stock interest of J. M. Wade in both of these corporations. Thereafter the stock in each corporation was owned equally by A. Z. Wells and his wife.

---

1. "Sec. 101. Exemptions from Tax on Corporations.

"Except as provided in paragraph (12) (B) and in supplement U, the following organizations shall be exempt from taxation under this chapter—

\*        \*        \*        \*        \*

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. For loss of exemption under certain circumstances, see sections 3813 and 3814."

On July 15, 1949, A. Z. Wells and his wife executed nonintervention wills in which were incorporated provisions for the establishment of a charitable trust, the A. Z. Wells Foundation, upon the death of either, and for the immediate transfer and assignment to the Foundation of the stock interest of the decedent in the two plaintiff corporations. In order to assure the assignment to the Foundation of all the capital stock of the plaintiff corporations upon the death of either Mr. or Mrs. Wells, they entered into a collateral agreement on the same day that the wills were executed, which provided, in substance, that, on the death of either Mr. or Mrs. Wells, the survivor would immediately assign and transfer to the Foundation all the capital stock of the two corporations then owned by the survivor.

A. Z. Wells died on January 9, 1950, and his one-half interest in the stock of the two corporations passed to the A. Z. Wells Foundation, which came into being at his death. On January 18, 1950, Mrs. Wells, pursuant to the collateral agreement, endorsed her stock certificates, representing her one-half interest in the corporations, and handed them over to the trust officer of the Seattle-First National Bank, trustee for the Foundation.

The Foundation, through its trustee, has controlled the operations and business affairs of both Wells & Wade, Inc., and Wells and Wade Fruit Company since the death of A. Z. Wells. All of the earnings and profits of the corporations during the period in suit were paid to the Foundation. During the year 1950, the trustee voted the stock in the election of board members of the corporations.

In opposing the plaintiffs' motions for summary judgment, the Government apparently concedes that the Foundation was established for charitable purposes within the meaning of § 101(6) of the Internal Revenue Code of 1939. If no additional factors are involved here, the plaintiffs', as so-called "feeder organizations," would be exempt from taxation for the period in suit under our decision in Dillingham Transportation Building, Ltd. v. United States, 1957, 146 F.Supp. 953, 137 Ct.Cl. 389. This result is not affected by § 301 of the Revenue Act of 1950,[2] which removed the exemption from feeder organizations, but only with respect to taxable years beginning after December 31, 1950. Section 303, Revenue Act of 1950, 26 U.S.C.A. § 101 note.[3]

The thrust of the affidavit of Government counsel in support of the defendant's opposition to plaintiffs' motions for summary judgment is that the Foundation is not tax-exempt because part of the net earnings of the plaintiff corporations inured to the benefit of a private shareholder or individual during the year 1950. The first point raised by the affidavit is that the administrative file of the Internal Revenue Service shows that, although the stock certificates issued to Emogene S. Wells were endorsed in

2. "Sec. 301. Income of Educational, Charitable, and Certain Other Exempt Organizations.

\* \* \* \* \*

"(b) Feeder Organizations.—Section 101 [of the Internal Revenue Code of 1939] is hereby amended by adding at the end thereof the following paragraph:

"'An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under any paragraph of this section on the ground that all of its profits are payable to one or more organizations exempt under this section from taxation. For the purposes of this paragraph the term "trade or business" shall not include the rental by an organization of its real property (including personal property leased with the real property).'"

3. "Sec. 303. Effective Date of Part I.

"The amendments made by this part shall be applicable only with respect to taxable years beginning after December 31, 1950. The determination as to whether an organization is exempt under section 101 of the Internal Revenue Code from taxation for any taxable year beginning before January 1, 1951, shall be made as if section 301(b) of this Act had not been enacted and without inferences drawn from the fact that the amendment made by such section is not expressly made applicable with respect to taxable years beginning before January 1, 1951."

blank by her on January 18, 1950, and turned over to the trustee of the Foundation, these two stock certificates, representing her interest in Wells & Wade Fruit Company and in Wells & Wade, Inc., show a cancellation date of May 25, 1950, and November 16, 1950, respectively. The affidavit also states that another stock certificate for 2,000 shares of Wells & Wade, Inc., was issued to A. Z. Wells and Emogene Wells on June 2, 1947, and that the administrative file indicates this certificate was turned over to the trustee of the Foundation by the coexecutors of the estate on December 16, 1950.

The Government is apparently contending here that this lapse of time carries with it the suggestion that Mrs. Wells did not divest herself of her financial interest in the plaintiff corporations immediately after the death of her husband and that possibly, as a consequence, the net earnings of the corporations did not inure solely to the benefit of the Foundation. Assuming, as we must, for the purposes of these motions, that the mere mechanical act of cancelling the certificates occurred even as late as December 1950, this fact, standing alone, does not contradict the plaintiffs' allegations, supported by affidavits, that the control of the plaintiff corporations was in the hands of the trustee of the Foundation and that the net earnings of the corporations inured solely to the benefit of the Foundation, and not to the benefit of any private shareholder or individual, during the period in suit. Nor is it sufficient in substance to cast doubt on plaintiffs' allegations and thereby create a genuine issue of fact. Furthermore, the fact that there was an interval of time between the death of A. Z. Wells and the cancellation of the stock certificates issued to the Wells does not in our view change the fact that the Foundation's ownership of the stock of the plaintiff corporations commenced on the date of Mr. Wells' death when, under his will and under the collateral agreement, the right to ownership accrued. Cf. McFeely v. Commissioner, 1935, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83; Commissioner of Internal Revenue v. Timmer, 6 Cir., 1935, 78 F.2d 599; In re Verchot's Estate, 1940, 4 Wash.2d 574, 104 P.2d 490.

The second point raised in the affidavit of Government counsel is that:

"6. Information in the administrative file discloses the co-executors of the Estate of A. Z. Wells borrowed $200,000.00 from the Seattle-First National Bank at 3% for the purpose of paying administrative expenses of the estate. The information further shows that the Trustee of the A. Z. Wells Foundation executed a refunding and indemnity agreement to indemnify the co-executors of the estate for the borrowed $200,000.00. Other information in the administrative file discloses that on December 27, 1950, the A. Z. Wells Foundation received a dividend of $75,000.00 from Wells and Wade, Inc., which was the only income received by the Foundation during the year 1950. Information in the administrative file shows that on December 29, 1950, the Foundation paid $40,000.00 of this income to the A. Z. Wells Estate for repayment on the funds borrowed from the Seattle-First National Bank.

"7. The will of A. Z. Wells, attached to plaintiff's motion for summary judgment as Exhibit 3–A, makes no provision therein for the payment of expenses of administration of the estate. Information in the administrative file discloses that these expenses, exclusive of any taxes levied against the estate, amounted to $100,339.86.

"8. Paragraph VII of the will provided that all estate, inheritance, succession and gift taxes levied against the estate was [sic] to be borne by the remainder of A. Z. Wells estate and not payable by the named individual beneficiaries of his estate. Other information in the administrative file shows that the Federal estate taxes and State inheritance taxes finally paid totaled $37,-496.38. The remainder of the estate

included a separate bank account opened by A. Z. Wells to pay any taxes due by the estate."

We do not believe that these facts require the court to deny the plaintiffs' motions for summary judgment. The Foundation was the residuary legatee under the will of A. Z. Wells. The residue of the estate of A. Z. Wells, which consisted of stock in Wells & Wade Fruit Co. and Wells & Wade, Inc., was liable under the law of the State of Washington for the administration expenses. Rem.Rev.Stat. of Wash. § 1506; In re Cloninger's Estate, 1941, 8 Wash. 2d 348, 112 P.2d 139. In the circumstances we must conclude that the tax-exempt status of neither the Foundation nor the plaintiff corporations was affected by the decision of the trustee of the Foundation to meet this obligation by underwriting a loan, which would subsequently be repaid from dividends of the plaintiff corporations, rather than by permitting the sale of a portion of the trust corpus. The reasoning which controlled our decision in Knapp Brothers Shoe Manufacturing Corp. v. United States, 1956, 142 F.Supp. 899, 135 Ct.Cl. 797, 802, is applicable here.

We can find no support in either the taxing statutes or in logic for the suggestion advanced by Government counsel during oral argument that the only way the liability imposed on the trust corpus could be satisfied, without jeopardizing the tax-exempt status of the Foundation, was to use the proceeds from a sale of the stock in the plaintiff corporations.

The pleadings, together with the affidavits submitted by both parties, show that there is no genuine issue as to any material fact and that the plaintiffs are entitled to judgment as a matter of law.

Wells & Wade, Inc., the plaintiff in No. 353–58, is entitled to recover the sum of $69,601.50, with interest as provided by law. Wells & Wade Fruit Co., the plaintiff in No. 354–58, is entitled to recover the sum of $56,974.54, with interest as provided by law.

Judgments for the above amounts will be entered accordingly.

It is so ordered.

DURFEE, LARAMORE, MADDEN, and WHITAKER, Judges, concur.