Harlan O. DAVIS, Trustee, Robert L. Barton, Trustee, Wallace Harrison, Trustee, Trustees of Columbus Youth Foundation, a Trust, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5737.

United States District Court
S. D. Ohio, E. D.

Dec. 11, 1961.

Robert L. Barton, W. C. Harrison, John W. Christensen, Columbus, Ohio, for plaintiffs.

Rufus E. Stetson, Jr., Asst. U. S. Atty. Gen., for defendant.

WEINMAN, District Judge.

This action is brought by plaintiffs, as Trustees of the Columbus Youth Foundation, a Trust (hereinafter referred to as the "Foundation") under Title 28 U.S.C. § 1346(a) (1) and Title 26 U.S.C. § 7422.

The Foundation is seeking to recover federal income taxes claimed to be erroneously collected by the District Director of Internal Revenue at Columbus, Ohio, and interest thereon for the years 1955 and 1957.

FINDINGS OF FACT.

1. The Columbus Youth League (hereinafter referred to as the "League") was organized as a non-profit corporation pursuant to the laws of the State of Ohio on March 1, 1955, for the purpose of acquiring a baseball stadium located in the City of Columbus, Ohio, from the St. Louis Cardinal organization and to make

the stadium available to the Columbus Jets (a baseball organization of Columbus, Ohio) on a fair rental basis and to the community as a whole, without rental, for public affairs, providing for the ultimate disposition of its net assets to the Foundation.

(a) The League did enter into an agreement and did purchase the baseball stadium on West Mound Street, Columbus, Ohio, from the Columbus Baseball Club, Inc.

(b) On March 3, 1955, the Columbus Baseball Club, Inc., loaned $75,000.00 to the League and this $75,000.00 was part of the proceeds of loans hereinafter referred to. With this sum of money and a borrowing by the League on November 23, 1960, of $300,000.00, the purchase of a baseball stadium was financed.

The two loans made to the League were evidenced by notes and secured by mortgages on the baseball stadium and appurtenant grounds.

2. The Columbus Baseball Club (hereinafter referred to as the "Club") was organized as a non-profit corporation pursuant to the laws of the State of Ohio on January 11, 1955, for the purpose of acquiring an International League franchise and to operate the baseball club known as the "Columbus Jets", providing for the ultimate disposition of all net assets to the Foundation.

(a) After its incorporation, out of the fifteen local persons members of this corporation, eleven of whom were residents of the Columbus area, made or caused to be made loans of $10,000.00 each to the Club. Each of these loans was evidenced by 5% Secured Debentures, each due on January 15, 1975. It was from this money that the Club loaned $75,000.00 to the League as set forth in 1(b) above.

3. The Columbus Youth Foundation (hereinafter referred to as the "Foundation") was organized as a common law charitable trust created by a trust agreement dated March 1, 1955.

(a) The trust was organized for the benefit of the underprivileged, sick and handicapped youth of the Columbus area

and was designed as an organization which could accept voluntary contributions and solicit the assistance of all residents for the purpose of helping the underprivileged, sick and handicapped youth of the Columbus area as more fully set forth in the Trust Agreement, as amended:

"The Foundation is established and shall be operated exclusively to benefit and help the underprivileged, sick and handicapped youth of the City of Columbus and its environs by contributing directly to the needs of such youth and by making contributions to recognized charities, hospitals and other institutions devoted to the education, care and welfare of such youth."

(b) During the years 1955, 1956 and 1957, the Foundation received from persons or corporations many of the 5% Secured Debentures of the Club in the form of a donation direct to the Foundation.

(c) On July 13, 1956, F. E. Jones and The Columbus Mutual Life Insurance Company each offered to contribute $10,-000.00 to the Foundation upon the condition that said contribution be used exclusively for the purpose of making a loan of $20,000.00 to the Club. Following the acceptance by the Foundation of said offers upon the condition imposed, the Foundation on the same date loaned $20,000.00 to the Club. This loan was evidenced by a promissory note secured by a surety bond.

(d) Other contributions to the Foundation included: $100.00 contributed by the Columbus Area Chamber of Commerce; $100.00 contributed by the Yassenoff Foundation; and the assignment by F. E. Jones to the Foundation of the promissory note of the Club in the principal sum of $10,000.00.

4. No part of the activities of the Foundation have consisted of carrying on propaganda or otherwise attempting to influence legislation, and the Foundation has not participated in or intervened in any manner in any political campaign

or on behalf of any candidate for public office.

5. No amount has been paid by the Foundation as compensation, reimbursement of expenses or otherwise, to any trustee, officer, attorney, accountant, agent or other person, and no part of the net earnings have inured to the benefit of any individual or private organization.

6. The operations of the Foundation have, since its inception, been conducted by its Trustees, Harlan O. Davis, Robert L. Barton and Wallace C. Harrison, in pursuance of the charitable purposes set out in the Trust Agreement.

7. The source of income of the Foundation was not from a trade or business and the primary purpose of the Foundation was not a business for profit.

## DISCUSSION.

The sole question presented is whether the Foundation meets the requirements of the Internal Revenue Code so as to qualify as an exempt organization thereunder.

Section 501(a) of the Internal Revenue Code provides that an organization described in subsection (c) shall be exempt from taxation unless such exemption is denied under Section 502, 503 or 504, 26 U.S.C. §§ 501(a, c), 502–504.

Subsection (c) describes 17 types of organizations which qualify for exemption, one of which is described under subsection (c) (3) as an organization "operated exclusively for * * * charitable * * * purposes, * * *, no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *."

Regulations Section 1.501(c) (3)–1 promulgated under Section 501(c) (3) provides that to be exempt under said section "an organization must be both organized and operated exclusively for one or more of the purposes specified in such section."

As to the organizational test, the Regulations provide in pertinent parts as follows:

"(b) *Organizational test*—(1) *In general.* (i) An organization is or-ganized exclusively for one or more exempt purposes only if its articles of organization * * *

"(a) Limit the purposes of such organization to one or more exempt purposes; and

"(b) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes."

\* \* \* \* \*

"(4) *Distribution of assets on dissolution.* An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes * * *."

Clearly, the organizational test for exemption, as set out in the Regulations, is met since the Trust Agreement creating the Foundation: (a) limits the purposes to charitable purposes, (b) does not expressly empower the Foundation to engage in any activities except as are incidental to its express charitable purposes, and (c) expressly dedicates its assets to charitable purposes, with all assets being transferred to the Boys' Club of Columbus upon dissolution or other termination of the trust.

As to the operational test the Regulations provide in pertinent parts as follows:

"(c) *Operational test*—(1) *Primary activities.* An organization will be regarded as 'operated exclusively' for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c) (3) * * *.

\* \* \* \* \* \*

"(2) *Charitable defined.* The term 'charitable' is used in section 501(c) (3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c) (3) of other tax-exempt purposes which may fall within the broad outlines of 'charity' as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; * * * "

Similarly, the Foundation has met the operational test for exemption because it is primarily engaged in activities which accomplish charitable or other exempt purposes. Further, the Trustees have caused the distribution of approximately 95% of the total trust income to recognized charitable organizations. No amount has been accrued or otherwise applied as compensation to or for the benefit of any private person or organization.

The case relied upon by the government in its brief is not controlling under the facts of this case. Veterans Foundation v. United States, D.C., 178 F.Supp. 234, affirmed in 1960, 10 Cir., 281 F.2d 912.

We thus conclude under the evidence presented and in light of the aforementioned statutes and regulations that the Foundation was organized and operated exclusively for charitable purposes.

Let us look further to determine if the facts warrant a denial of exemption under Section 502, 503 and 504 of the Internal Revenue Code.

Section 502 denies exemption to "an organization operated for the primary purpose of carrying on a trade or business for profit * * *." Clearly, the Foundation is not operated for the primary purpose of carrying on a trade or business for profit.

Section 503(c) denies exemption to an organization which:

"(1) lends any part of its income, or corpus, without the receipt of adequate security and a reasonable rate of interest, to;

"(2) pays any compensation, in excess of a reasonable allowance for salaries or other compensation for personal services actually rendered, to;

"(3) makes any part of 'its services available on a preferential basis to;

"(4) makes any substantial purchase of securities or any other property, for more than adequate consideration in money or money's worth, from;

"(5) sells any substantial part of its securities or other property, for less than an adequate consideration in money or money's worth, to; or

"(6) engages in any other transaction which results in a substantial diversion of its income or corpus to;

the creator of such organization * * *."

The facts disclose that none of these prohibited transactions have been engaged in by the Foundation.

Section 504 provides for the denial of exemption in any taxable year if the amounts accumulated out of income during such taxable year or any prior taxable year are unreasonable. The facts disclose that there has been no accumulation by the Foundation but, rather, that substantially all of its income has been distributed in furtherance of the charitable purposes for which it was organized and has been operated.

## CONCLUSIONS OF LAW.

1. The exemption from taxation granted to organizations created and operated for charitable purposes was intended to promote charity and, therefore, should be liberally construed in determining the exempt status of the Foundation.

2. The Foundation, having been organized and operated exclusively for charitable purposes, with no part of its net earnings inuring to the benefit of any

private shareholder or individual, is entitled to exemption from taxation.

3. The Foundation, having participated in no prohibited transactions operating to deny exemption, is entitled to exemption as a charitable organization.

4. Distribution of $14,644 for charitable purposes out of a total income of $15,233, with an aggregate of $8.80 charged to expense and $35.37 paid for federal income taxes, does not constitute an unreasonable accumulation of income warranting a denial of exemption to the Foundation under the Internal Revenue Code.

### ORDER.

In accordance with the foregoing Findings of Fact, Discussion and Conclusions of Law, it is ordered, adjudged and decreed that judgment should be and it hereby is entered in favor of plaintiffs and against the defendant, as prayed for in the Complaint.