*Decisions will be entered under Rule 50.*

VETERANS FOUNDATION, A NONPROFIT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81916.    Filed April 17, 1962.

*Gaylen S. Young,* (an officer) for the petitioner.
*Richard G. Worden, Esq.,* for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency of $8,442.96 in income tax against the petitioner corporation for its fiscal year ended February 28, 1958; and also an addition to tax of $844.30 under section 6651(a) of the 1954 Code, because of its failure to file a return for said fiscal year within the time prescribed by law.

Petitioner, as hereinafter more fully shown, operated two stores wherein it sold at retail and wholesale, used clothing, furniture, and appliances which it had received free of charge from members of the public; and it then turned over portions of its profits to a "social welfare" organization which was exempt from taxation. There are three questions presented for decision:

(1) Was petitioner, during its fiscal year ended February 28, 1958, an organization "not organized for profit but operated exclusively for the promotion of social welfare" within the meaning of section 501(c)(4) of the 1954 Code—and therefore exempt from taxation? Or was it a "feeder organization" as defined by section 502 of the Code—and therefore not exempt from taxation?

(2) If petitioner was not exempt from taxation, what was the basis for computing its gains or losses from sales of the used articles which it sold in said taxable year?

(3) Was petitioner's failure to file its income tax return for the taxable year involved, within the time prescribed by law, due to reasonable cause and not due to willful neglect, within the meaning of section 6651(a) of the 1954 Code?

### FINDINGS OF FACT.

Some of the facts were stipulated. The stipulation of facts and the exhibits identified therein, are incorporated herein by reference.

Petitioner is a corporation organized under the laws of Utah,[1] as a "nonprofit corporation." It filed its income tax return for the fiscal year ended February 28, 1958, with the district director of internal revenue at Salt Lake City, Utah.

Petitioner was formed by certain members and officers of the Utah Department of the Disabled American Veterans (hereinafter called the Utah D.A.V.) on or about December 20, 1955. It is a membership corporation; and, as such, it does not have any authorized shares of capital stock. Every member in good standing of the Utah D.A.V. (which apparently is an unincorporated association) is also a member of the petitioner corporation. Petitioner's corporate purposes and powers are set out in its articles of incorporation, as amended on or about February 28, 1957; and they are as follows:

---

[1] Sec. 16-6-1, *et seq.,* Utah Code (1953).

## ARTICLE IV

*PURPOSE:* The objects, business and pursuits of this corporation shall be:

A. To raise funds for use by the Department of Utah, Disabled American Veterans, and/or in the discretion of the Board of Directors, for use by the various chapters in the State of Utah of said Disabled American Veterans, which funds shall be used by said State Department and/or Chapters, as the case may be, to carry out the policies, purposes, ideals and programs of said Disabled American Veterans, their widows, their orphans, and their dependents, by providing employment and rehabilitiation [*sic*] opportunities and to work with, or aid financially any public or private agencies devoted to the cause of improving and advancing the conditions, health and interests of wounded, gassed, injured and disabled veterans.

B. For the accomplishment of these objects, this corporation shall have the power to engage in the general salvage business, among other things to solicit the public for second hand articles, including clothing, furniture and other household equipment and property of all kinds, and to repair and recondition the same and to offer the same to the public for sale and to use the net money received therefrom to carry out the purposes and objects of this corporation.

*GENERAL POWERS:* This corporation is to have and exercise all the rights and powers necessary to carry out its said objects and pursuits, to contract and be contracted with and to do and perform all the acts and things necessary in pursuance of said objects and purposes to the same extent as natural persons might or could do, at any place, either as principal or agent, or as contractor, trustee, or otherwise, alone or in company with others; to lease or buy suitable buildings and equipment; and to acquire, by purchase or gift, such personal and real property as may be necessary to carry out the objects of this corporation; to receive donations of real and personal property to be applied to the uses and purposes of the corporation; to accumulate surpluses to insure its stability; to take, hold and manage real and personal property conveyed to it in fee or in trust, the income from which is to be applied to the uses and purposes of this corporation, and to execute such trusts; to mortgage or otherwise encumber any of its property, or to sell and convey the same, or to enter into any contract therewith. It shall also have the power to make such expenditures and to take such steps as the Board of Directors may deem necessary to carry out the ultimate objectives of the corporation, as will tend to build its prestige before the public, including among other things, the requirement from time to time of detailed reports of said State Department or Chapters of the Disabled American Veterans, as the case may be, showing what the money received by them from this corporation, was used for, with the power to withhold further payments to them if the money has been unjudiciously spent, and has not been used to substantially carry out the objects of the corporation as set out in paragraph "A" of this Article. The enumeration of any specific objects, purposes or powers herein shall not be construed as a limitation or abridgement of the general powers of the corporation.

The circumstances surrounding the organization of petitioner corporation may be summarized as follows. In about 1952, an individual named Orlo Ellison came to Salt Lake City at the instance of certain officers of the Utah D.A.V., to open a store where used articles of clothing, furniture, and household appliances would be sold. Donations of such used articles were to be solicited from members of the public by employees of Ellison, who would make such solicitations in the name of the Utah D.A.V. In consideration for the use of the

D.A.V.'s name in such solicitations, Ellison contracted to pay a fixed percentage of the gross income from the store to the Utah D.A.V. In 1952 or 1953, Ellison opened a store of the type above described (called Veterans Thrift Store) in Salt Lake City; and subsequently at an unspecified date prior to 1956, he opened a second Veterans Thrift Store in Ogden, Utah. Ellison operated the stores as a proprietor until February 1, 1956; and pursuant to his contractual arrangements with the Utah D.A.V., he contributed a percentage (apparently 10 percent) of the gross income of both stores to said organization.

In late 1955, the Utah D.A.V. decided to purchase the two Veterans Thrift Stores from Ellison; and in order to avoid involving the business in certain "political controversies" which existed within the Utah D.A.V., its officers decided to organize the petitioner as a separate corporation, and to have it purchase the stores. As above found, petitioner was organized on or about December 20, 1955. And on or about February 1, 1956, petitioner purchased the two Veterans Thrift Stores from Ellison, at a total price of $90,000 to be paid out of future earnings of the stores, and with Ellison to be retained as manager thereof until the purchase price had been paid in full. In connection with such purchase, petitioner assumed Ellison's contractual obligation to make contributions from its earnings to the Utah D.A.V.

At all times after purchasing the Veterans Thrift Stores and during the taxable year involved, petitioner's "primary, if not sole, activity" was that of operating said two stores. Such operation was conducted in the following manner. Solicitors employed by petitioner went from house to house in the residential areas of Salt Lake City and Ogden, asking the occupants for used clothing, furniture, and household appliances. When such used articles were received, they were taken to the stores, where the clothing was sorted into two groups—that which was salable as such, and that which was not. As regards those articles which were salable as clothing, employees of the petitioner put price tags thereon; and the same were then sold at retail to customers who came to the stores, as well as at wholesale to other secondhand stores. Illustrative of the prices charged for used clothing are the following: Men's suits and overcoats, $2.95 to $3.95 [2] each; ladies' blouses, 20 cents; infants' undershirts, 5 cents. Clothing which was found unfit for resale as such, was sold as rags. The record does not contain evidence as to the selling prices of the other articles (such as used furniture, household appliances, and toys) which the solicitors procured.

---

[2] Occasionally, high quality suits of clothes were received in a soiled condition. Petitioner had these drycleaned; and they were sold for prices ranging from $8 to $10 each. The record herein does not reveal any other processing by petitioner with respect to the used articles contributed to it.

Petitioner did not have or maintain any records or books of account which would show, as regards the used articles which it received and sold: (1) The identity of any particular articles; (2) the date when the same was received; (3) the name of the person contributing the same; (4) the contributor's cost basis therefor; (5) the fair market value thereof at the time contributed; (6) the date on which it was sold; (7) any reconditioning expenses incurred with respect thereto; or (8) the price received for the article when sold.

The proceeds received by petitioner from sales of the above-described used articles during the taxable year involved, amounted to $155,409.19. On the Federal corporate income tax return which petitioner filed for said taxable year, it reported said sum as "Gross receipts (where inventories are not an income-determining factor)"; and it deducted therefrom $68,543.76 as "Cost of operations" (identified in Schedule B of the return as being composed of $49,458.47 for salaries and wages, and $19,085.29 for "Soliciting"), to arrive at "Gross profit" on operations of $86,865.43 to which was added "Other income" of $15.96 for a "Total income" of $86,881.39. Petitioner did not enter any amount on the return as "Cost of goods sold," or show any inventories of merchandise, either as of the beginning or as of the end of the taxable year. Other deductions (including such items as rents, repairs, interest, and advertising expense) were claimed on petitioner's return in the total amount of $60,068, which was subtracted from its "total income" of $86,881.39 to yield net taxable income per the return of $26,813.39.

The parties have stipulated that during the taxable year involved, the profits from the operation of the two Veterans Thrift Stores, other than the portion thereof which was used to make payments to Ellison on the purchase price of the stores, were contributed to the Utah D.A.V.—which has been ruled by the Commissioner of Internal Revenue to be exempt from income taxation as a social welfare organization, under the provisions of section 501(c)(4) of the 1954 Code. The only other charitable aspect of petitioner's activity was that from time to time it donated to worthy veterans, on recommendation of the Utah D.A.V., clothing and other articles "in amounts totaling perhaps 10 percent of its income."

Petitioner was denied exemption from income taxation by administrative action of the Commissioner of Internal Revenue on November 14, 1957.

On or about May 8, 1958, which was 1 week prior to the due date of its corporate income tax return for its fiscal year ended February 28, 1958, petitioner filed with the district director of internal revenue for Utah pursuant to section 6081(b) of the 1954 Code, an instrument captioned "Application for Automatic Extension of Time to File U.S. Corporation Income Tax Return" (Internal Revenue Service Form

7004). The extension of time so requested was for 3 months. The filing of said instrument had the effect of automatically extending the due date for its return for said fiscal year, to August 15, 1958; and petitioner did not thereafter receive any communication from the district director, either granting or denying its application for extension of time. It filed its return for the fiscal year ended February 28, 1958, on October 13, 1958—which was approximately 2 months subsequent to the due date of the return as automatically extended.

## ULTIMATE FACTS.

Petitioner was, during its fiscal year ended February 28, 1958, operated for the primary purpose of carrying on a trade or business for profit; it was a "feeder organization" within the purview of section 502 of the 1954 Code; and it was not exempt from income tax under section 501(c)(4).

Petitioner's failure to file its income tax return for the taxable year involved within the time prescribed by law as extended, was not due to reasonable cause.

## OPINION.

1. Petitioner's position on the first issue, as stated on its brief, is that during the taxable year here involved it was exempt from taxation, either as a general charitable organization under section 501(c)(3) or as a social welfare organization under section 501(c)(4) of the 1954 Code. Respondent contends, on the other hand, that petitioner was a "feeder organization" within the meaning of section 502; and that accordingly it is not exempt from tax.

At the outset, we point out that there is no issue properly before us relating to petitioner's exemption under section 501(c)(3). Petitioner did not allege or claim, either in its original petition, or in its amended petition, or at the trial, that it was exempt from taxation under section 501(c)(3); and the first time such point was raised was on its brief. We have heretofore held, and we also hold here, that issues raised for the first time on brief will not be considered or decided. See *F. H. Philbrick*, 27 T.C. 346, 353, and cases therein cited. Thus on the first issue, the only question before us for consideration is whether petitioner is exempt from taxation under section 501(c)(4), relating to social welfare organizations.

This identical issue with respect to petitioner's prior taxable year ended February 28, 1957, was presented by it in a suit for refund of taxes, which was decided by the United States District Court for the District of Utah, in October 1959. *Veterans Foundation* v. *United States*, 178 F. Supp. 234. In that case, District Judge Christenson decided, in a well written and carefully considered opinion, that petitioner was operated for the primary purpose of carrying on a trade

or business for profit; that it constituted a "feeder organization" within the purview of section 502; and that therefore it was not exempt from taxation under section 501(c)(4). Said decision of the District Court was thereafter affirmed by the Court of Appeals for the 10th Circuit, 281 F. 2d 912.

We discern no difference, either in petitioner's purposes or in its activities, as between its fiscal year 1957 and its fiscal year 1958. We agree with the decisions of the Court of Appeals and the District Court above mentioned; and accordingly, on the basis of all the evidence herein and for the reasons set forth in said opinions, we hold that during the taxable year here involved petitioner was a "feeder organization" operated for the primary purpose of carrying on a trade or business for profit; and that it was not exempt from taxation for said year. We decide this first issue for the respondent.

2. Under the second issue, we must determine the proper basis for computing petitioner's gains or losses from the sales of the used articles of clothing, furniture, and household appliances which it sold during the taxable year here involved. These used articles were contributed to it by individuals in Ogden and Salt Lake City, who were solicited for that purpose by petitioner's employees. Petitioner paid no consideration for any of these used articles. And it did not sell any articles other than those so contributed to it.

As hereinbefore found, the petitioner did not on its corporate income tax return, either take into consideration its inventories of used articles, or accord any basis to such articles. However, in its amended petition herein, it alleged that, even if it were held to be not exempt from income taxation (as has been done in our decision in the first issue), it nevertheless derived no taxable income from its sales of used articles. Its position in this regard is, in substance, that the used articles which it obtained by solicitation from the public, constituted "gifts" to it; that under the provisions of section 1015(a) of the 1954 Code, its basis for computing gain or loss on the resale of each article sold "should have been the same as it would have been in the hands of the donor"; and that, since the costs of said articles to the "donors" were "necessarily much more" than the amounts for which the articles were sold, it derived no gains, gross profits, or taxable income from its business operations. It should be observed in this connection however, that even if the articles sold did constitute "gifts" to petitioner and even if section 1015(a) were applicable, the basis for which petitioner contends would be erroneous; for, if all the articles were sold for less than their "cost" to the donors, then under said section of the statute, petitioner's substituted basis for the articles would not be the "donors' costs" therefor, but rather the fair market values of the articles on the dates of the "gifts."

Respondent's position, on the other hand, is that petitioner has in

any event failed to sustain its burden of proof, for the reasons that it has not established either: (1) The basis of the articles in the hands of persons from whom they were received; or (2) the fair market values of the articles at the time petitioner received them; or (3) the prices for which petitioner sold the articles—all of which are essential to any determination of gains or losses in respect to the sales.

It is our opinion, however, that the controlling section of the 1954 Code, under which petitioner's basis for the used articles that it sold must be determined, is not section 1015(a), but rather section 362 (c)(1). This latter section provides, in substance, that if *property other than money* is acquired by a corporation, as a contribution to capital, and if such property is not contributed by a shareholder as such, then the corporation's basis for such property shall be zero.[3]

Section 362(c) had no counterpart in the Internal Revenue Code of 1939, or in any prior revenue act. The report of the Senate Finance Committee concerning this provision (S. Rept. No. 1622, 83d Cong., 2d Sess. p. 272 (1954)), shows however that the purpose of its enactment was to reverse the rule laid down by the Supreme Court in *Brown Shoe Co.* v. *Commissioner*, 339 U.S. 583. In that case, the issue pertinent to our present consideration, was the right of the taxpayer corporation there involved to obtain deductions for depreciation. Certain community groups (not shareholders of the taxpayer) had contributed cash and property to the taxpayer, as an inducement for it to locate or expand its facilities in the communities where the contributing groups were located. The Government had there taken a position (based on the decision in *Detroit Edison Co.* v. *Commissioner*, 319 U.S. 98) that the taxpayer had *no basis* for depreciation, because the property contributed to it actually had cost the taxpayer nothing. The Supreme Court held however, that the assets and cash which the community groups had so contributed to the taxpayer were "contributions to capital," notwithstanding that such groups were nonshareholders; and that both the assets contributed in kind, and the other assets which the taxpayer had purchased with the contributed money, did have bases with respect to which depreciation was allowable. The Court thus overruled the Government's contention that such properties had a *zero basis*.

The reversing impact of section 362(c)(1) upon the rule which was laid down in the *Brown Shoe Co.* case is, that where property (other than cash) is contributed to the capital of a corporation by a nonstockholder, a *zero basis* is now accorded to such property in the hands of the corporation.

---

[3] The complementary section 362(c)(2), which is not here pertinent, deals with contributions of *money* to the capital of a corporation by nonshareholders. It provides in substance that the basis of any property acquired with such money be reduced by the amount of contributed money used in the acquisition; and that if the money contributed is in excess of the amount expended to purchase property, then such excess is to be applied to reduce the basis of any property held by the corporation.

We think that, in the instant case, the contributions of used clothing and other articles to the present petitioner by members of the public, were contributions to petitioner's capital in the form of inventory, rather than "gifts" within the meaning of section 1015(a). The ultimate object of whatever donative intent the contributors of the property may have had, was not the petitioner corporation itself, but rather the Utah D.A.V. Petitioner's function was merely to act as an intermediary "feeder organization"; and to take the used articles and sell them, so as to convert the same into cash which the Utah D.A.V. could more readily use for its charitable purposes. And it was in the course of prosecuting these activities that, as both this Court and the Utah District Court have heretofore found and held, petitioner operated a business for profit. The used articles were petitioner's merchandise inventories; and such inventories were an indispensable part of the capital of its business.

Petitioner argued on its brief, that it was a "nonprofit" corporation; and that it did not have any capital, or any stockholders. But the mere fact that petitioner was organized as a "nonprofit" corporation is insufficient to controvert the patent fact that it actually did realize profits. It sold goods for which it had paid nothing, for amounts which exceeded its operating expenses. It had sales for the taxable year involved in excess of $155,400; and the amount by which its gross receipts for said year exceeded all its operating expenses, was more than $26,800. The excess of receipts over operating costs was profit—nothing more and nothing less. And, as the Supreme Court of Utah held in the following cited case, the capital of a corporation is its assets, regardless of their source, which are utilized for the conduct of the corporate business and for the purpose of deriving gains and profits therefrom. *Parkinson* v. *State Bank of Millard County*, 84 Utah 278, 35 P. 2d 814, 821.

There can be no doubt that petitioner's inventory of used articles fits squarely within the foregoing principle. It is true that petitioner did not issue any stock, or have any stockholders; but that is of no consequence here. The significant point is, that the members of the public at large who contributed used articles, were strangers to petitioner just as were the community groups which contributed cash and property to the taxpayer in the *Brown Shoe Co.* case. Section 362(c) now requires that a *zero basis* be used for property acquired in a situation such as that in the *Brown Shoe Co.* case; and in our opinion, said section is here controlling, and has the same effect in the instant case.

We hold, for the foregoing reasons, that the used articles which petitioner received from members of the public and sold during the taxable year here involved, were contributions to its capital; and that said articles, by virtue of section 362(c)(1), had a basis to petitioner

of zero. We reject petitioner's contrary contention that section 1015 (a) is here applicable. We decide this second issue also in favor of the respondent.

3. The third and final issue is whether petitioner's failure to file its income tax return for the taxable year within the time prescribed, was "due to reasonable cause and not due to willful neglect" within the meaning of section 6651(a) of the 1954 Code.

What happened here was this: On May 8, 1958, which was 1 week before the date when petitioner's income tax return for the fiscal year ended February 28, 1958, was due, it filed (on Form 7004) a request for an "automatic" extension of 3 months within which to file such return, as was permitted by section 6081(b) and the regulations thereunder. The filing of such request automatically extended the due date for the return to August 15, 1958; and no reply was made by respondent to petitioner's application. Petitioner thereafter filed its return for said year on October 13, 1958, which was slightly less than 2 months after the due date as automatically extended.

The main thrust of the petitioner's defense against imposition of the addition to tax is that it expected but failed to receive a reply from the respondent to its request for the automatic extension. No such reply appears to have been required. See Income Tax Regs., sec. 1.6081–3(a)(2). Nor do we believe that any such reply could reasonably have been expected. Even assuming that a reply might reasonably have been expected, we do not see how this could excuse petitioner's action in failing to file its return for 2 months after the extended date which it had requested. We regard the following statement from petitioner's brief to be significant: "[F]or some reason or other it [the return] was overlooked and the petitioner lost tact [*sic*] of the situation until reminded by the Department [Internal Revenue Service]."

We hold, in accordance with the finding of ultimate fact which we have hereinbefore made, that petitioner's late filing of its return was not due to reasonable cause. Accordingly, respondent's imposition of the addition to tax under section 6651(a) is sustained.

*Decision will be entered for the respondent.*