Disabled Veterans Service Foundation, Inc. v. Commissioner.
Disabled Veterans Service Foundation, Inc. v. Commissioner
Docket No. 1480-68.
United States Tax Court
T.C. Memo 1970-46; 1970 Tax Ct. Memo LEXIS 312; 29 T.C.M. (CCH) 202; T.C.M. (RIA) 70046; February 19, 1970, Filed Thomas F. Roche and James F. Flanagan, 111 W. Washington St., Chicago, Ill., for the petitioner. Robert H. Burgess and William L. Ringuette, for the respondent. 203 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income taxes for the taxable years ending November 30, 1961, 1962, 1963, 1964, and 1965 in the amounts of $20,728.52, $20.937.55, $4,460.40, $22,344.62, and $22,433.57, respectively. The major issue is whether petitioner is to be treated as an integral part of the Disabled American Veterans, Department of Illinois, an organization exempt from Federal income taxes under section 501(c)(4), [1] or a separate feeder organization taxable *315 pursuant to section 502. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioner, Disabled Veterans Service Foundation, Inc. (hereinafter DVSF), was incorporated under the name Operation Reclamation as a not-for-profit corporation under the laws of the State of Illinois on June 30, 1959. The Articles of Incorporation were amended on November 10, 1961 to change its name to Disabled Veterans Service Foundation, Inc. Petitioner's principal place of business at the time of filing the petition herein was Chicago, Illinois. Petitioner did not file a corporate income tax return for the years in question. Neither petitioner nor the Department of Illinois, Disabled American Veterans (hereinafter IllinoisDAV), filed an annual information return *316 entitled, Return of Organization Exempt from Income Tax, Form 990, for the years 1961 through 1964. During the period in question, petitioner maintained its books and records upon the basis of a fiscal year ending November 30. Thereafter, petitioner shifted to a fiscal year ending on June 30 to conform with the fiscal year of IllinoisDAV. The IllinoisDAV was organized pursuant to a charter issued by the national Disabled American Veterans of the World War in 1921. The national organization was authorized by an Act of Congress. The national DAV and its departments and subordinate chapters were ruled exempt from Federal income taxes under section 101(8) of the Internal Revenue Code of 1939 (the predecessor of section 501(c)(4) of the Internal Revenue Code of 1954) during the years in question by virtue of a letter ruling issued by the Commissioner of Internal Revenue on June 24, 1942, which letter ruling was unrevoked as of the date of the trial herein. The IllinoisDAV became a not-for-profit corporation under Illinois law on October 3, 1961. Its purposes were "Civic, Patriotic, Charitable, and Social, and in particular to receive *317 funds for the maintenance and expension for rehabilitation facilities for disabled veterans and to do things necessary to promote employment for disabled veterans." All fund raising projects conducted by the IllinoisDAV were required to be approved by the adjutant of the national DAV in accordance with the provisions of the national DAV bylaws. The petitioner, DVSF, evolved from an unincorporated group of sixteen local chapters of the IllinoisDAV, which originally operated under the name "Operation Reclamation." This predecessor of DVSF was organized on the local chapter level rather than the state level so as to avoid the supervisory powers of the national DAV. The bylaws of Operation Reclamation provided that its purposes were "civic, patriotic, charitable and social, and, in particular, to receive funds for the maintenance and expansion for rehabilitation facilities for disabled veterans and to do all things necessary to promote employment for disabled veterans." The organization was governed by a board of eight members, who filled vacancies by majority vote upon nominations submitted by the chapters. After petitioner assumed the name DVSF, the board consisted of eleven members *318 and included four specified officers of the IllinoisDAV and seven other members who selected their successors conditioned upon approval of the State Executive Committee, IllinoisDAV. On April 9, 1962, the articles of incorporation were amended by deleting the words "and social" from the purpose clause. The sixteen local chapters entered into an agreement in 1958 with one Harold McClintock, trading under the firm name of American Mercantile Company, for the purpose of conducting a salvage operation whereby merchandise and other articles would be obtained for resale. American Mercantile was authorized under the 204 agreement to solicit, warehouse, and sell merchandise and other articles. The agreement between the local chapters and McClintock was terminated early in 1961. On July 27, 1960, Operation Reclamation entered into a ten-year management contract with Alfred C. Welker (hereinafter Welker) for the operation of Thrift Stores for the sale of used and reconditioned merchandise. The contract provided that DVSF would own the stores and obtain the necessary permits for doing business. Welker, using the name Alfred C. Welker Operations, Inc., was to conduct the salvage and Thrift *319 Store business on behalf of DVSF. He was to furnish all trucks and other necessary equipment and was given the power to hire and fire all employees of the business, which was conducted under the name "Operation Reclamation, Disabled American Veterans." The contract further provided that Operation Reclamation would bear the cost of all capital expenditures while the Welker firm would pay all operational expenses from the gross proceeds of the operation. The remainder, or net profit, was divided equally between Welker and Operation Reclamation. The contract specified that disabled veterans were to receive a preference in hiring and that merchandise not in excess of 10 percent of that in stock would be made available for distribution to needy disabled veterans. The general operating procedure of the Thrift Stores was as follows: From September 1960 until the spring of 1963, walking solicitors contacted members of the general public by means of door-to-door canvassing. The solicitors sent in reports which provided a basis for truck routing; a driver would then collect the merchandise and transport it to a central location, where it was sorted in categories, priced, and tagged. In the *320 spring of 1963, the method of solicitation was broadened to include solicitation by telephone. The Thrift Stores also purchased certain merchandise for sale. All merchandise was offered for sale to the general public through retail outlets. The board of directors of Operation Reclamation adopted a resolution on July 12, 1961, which is reproduced in pertinent part: NOW, THEREFORE, BE IT RESOLVED that Operation Reclamation enter into an agreement with the Department of Illinois, Disabled American Veterans, to continue to operate as a separate corporation for fund raising activities and that Operation Reclamation extend to the Department of Illinois such financial aid and assistance as is possible, which can be used to further the service activities and other necessary functions of the Department of Illinois, Disabled American Veterans. The IllinoisDAV and DVSF entered into a trust agreement on November 10, 1961 which designated the IllinoisDAV as "the beneficiary" and DVSF as "the trustee." This trust agreement provided in pertinent part: WHEREAS, it is the desire of the Department of Illinois, Disabled American Veterans to make such financial arrangements as will enable it *321 to maintain and to expand its Statewide Rehabilitation, Liaison and Educational Services for the benefit and on behalf of disabled veterans and their dependents; and WHEREAS, the Department of Illinois, Disabled American Veterans desires that all funds, investments or other valuable assets as may be acquired in the manner as hereinafter set forth shall be properly protected, invested and supervised by a Board of Trustees, which is not subject to a repeated change of personnel and consequently of policy, to be available for appropriation back to the Department of Illinois, Disabled American Veterans for the maintenance and advancement of its Rehabilitation, Liaison and Educational Services for the benefit of disabled veterans and their dependents; and WHEREAS, the Department of Illinois, Disabled American Veterans desires that all such funds, monies and other assets as may be acquired from bequests, donations and from D.A.V. Thrift Stores shall be held in trust for the purposes hereinafter set forth; Now, therefore, this Indenture Witnesseth: That the beneficiary hereby designates, nominates and appoints the Disabled Veterans Service Foundation, party of the second part, to hold *322 as trustee, the principal and income of such monies as are derived by it from bequests, the Operation of DAV Thrift Stores or from such other valuable assets as may be entrusted to the Disabled Veterans Service Foundation by the Department of Illinois, Disabled American Veterans. That the Beneficiary and the Trustee do declare by this instrument to all donors and contractees and to all persons whatsoever that said funds and monies as are hereby derived and the income therefrom shall be held in trust by the Trustee named herein upon the terms and conditions hereinafter set forth; To have and to hold the proceeds 205 from any said bequest, donations and D.A.V. Thrift Stores and the monies, funds and income derived therefrom as Trustee for the Department of Illinois, Disabled American Veterans in trust, nevertheless, upon the uses and trusts for the following purposes and subject to the following terms and conditions herein set forth, that is to say: (2) The Trustee shall receive and hold in trust the net proceeds of funds, monies, donations, subscriptions, contracts or funds received from the operation of Thrift Stores or as may be conveyed to it by the Department of Illinois, *323 Disabled American Veterans and shall conserve, invest or re-invest the same for the benefit of the Department of Illinois, Disabled American Veterans, provided nothing shall be construed to prevent the Trustee from carrying out the purpose of this trust, provided that the Trustee shall not be liable hereunder for any matter or thing except only of its own negligence or willful misconduct. II The Trustee shall have the power to make and enter into a depository agreement with a responsible bank or trust company, or banks or trust companies, for the custody and preservation of the money and securities purchased with its funds. The trustee shall provide for the adequate bonding of such officers and agents as may be needed to protect any fund, securities, property and investments as may be in their custody. All securities subject hereto will be held in a safe deposit box or boxes to which access can be had only by the depository or bonding company and a representative of the Trustees acting together. III The Board of Trustees shall use due diligence to invest and re-invest and keep invested any and all monies and funds in its hands belonging to the Trust and shall be empowered and *324 authorized, in its discretion, to determine the form of such investments and re-investments, including bonds, common stocks, preferred stocks, and other equities and securities. IV The Trustee shall after each fiscal year furnish to the Beneficiary, a written statement (1) of the income and principal of the trust funds, (2) of the expenditures made therefrom for administrative purposes, if any (3) of the estimate net income for the next succeeding fiscal year, and (4) of the estimated amount available for the ensuing year for the purposes of the trust, which said accounting shall be certified by a Public Accountant, and the said Beneficiary may once each year, submit in detail and in writing, to the Trustee, together with an explanatory statement of analysis thereof a proposed budget of expenditure, for the purpose of said trust, which shall be limited to and covering the following: For the support and maintenance of its Liaison Service in any or all of the Regional Offices, Hospitals, Homes or facilities of the Veterans Administration, in Army or Navy hospitals or discharge centers, or in any principal cities wherever deemed necessary; it shall be the duty of the Liaison and *325 Service Officers employed in this Liaison Service to advise, assist and aid any or all ex-servicemen or ex-service women, whether members of the Disabled American Veterans or not, who claim themselves entitled to any Governmental benefits provided for through the Veterans Administration, or of any other Governmental Bureau or Agency, and particularly to assist those ex-service men and women who are endeavoring to obtain or retain compensation, increased compensation, retroactive compensation, pension benefits in the preparation of their affidavits and in the prosecution of their claims or appeals for Governmental benefits; and in general to advise, aid and act for disabled war veterans and their dependents, or any and all matters of importance or interest to them collectively or individually which may arise before any of the several Bureaus or Departments of the United States Government or of any Municipal or State Government. 2. For the support and maintenance of its Rehabilitation Service, the object and duty of which is to advise and confer with representatives of the Veterans Administration and all other Governmental Bureaus in obtaining such changes and modifications in the *326 administration of the laws pertaining to ex-service men and particularly to disabled ex-service men as may be influenced by regulation, general orders, Director's decisions, Administrator's decisions, legal opinions, Attorney-General's opinions, Controller General's opinions, or other instructions or bulletins affecting their policy and procedure in any way having any bearing on the interests of ex-service men. 3. For the support of the "National Employ the Handicapped" Campaign, including cost of Scholarships and prizes for the winning Contestants in the Illustrated Poster Contest conducted throughout the High Schools of Illinois which Contest helps greatly to publicize the objectives of the "President's National Employ the Handicapped" Program, as well as to provide young Americans with a 206 clearer understanding of the need to utilize the talents and skills retained by those who were physically handicapped in Military Service or by disease or accident and by those means to help bring about a greater appreciation by Employers of the important social and economic advantages obtained by employing physically handicapped persons for jobs for which they remain qualified and particularly *327 to emphasize the need for employment to augment the meager compensation received by disabled veterans and thereby help restore their own dignity and the opportunity to support themselves which is every American's birthright. 4. For the printing, publishing and distribution of the official publications of the Disabled American Veterans in order to convey to the general public and to ex-service men and women, regularly and accurately, news, information and to advise of interest of importance to them. 5. For the defraying of any and all expenses, office supplies, salaries, office rent, printing, traveling, clerical help and all and several of the other sundry expenses incident to the accomplishment of these things set out in paragraphs one, two and three and next hereinabove. Said proposed budget and statement shall show and contain the recommendations of said Beneficiary with respect to the following, among other matters: (A) The amount from said Trust Fund or from any of the specific trust accounts or special trust accounts provided for in the Constitution and regulations of the trustee, which the Beneficiary purposes [sic] shall be spent for the aforesaid purposes. (B) *328 The apportionment of said proposed total expenditures among each of the above mentioned purposes of said Trust, showing in detail, the items going to make up the amount proposed to be apportioned to each of the aforesaid purposes. Said proposed budget and statement submitted by the Beneficiary shall beconsidered and acted upon by the Trustees, at any annual or special meeting of its Board of Trustees. The said Trustee may, in its discretion, accept or reject, in whole or in part said proposed budget and/or any item thereof and/or the apportionment thereof among the specified purposes and/or require the revision and alteration thereof and the re-submission thereof to the Trustee, it being the intent and purpose of this Declaration of Trust and said Trustee shall possess and exercise full, complete and exclusive power to determine whether any, and if so which, parts or items of said proposed expenditures are within or without the purposes of this Declaration of Trust, and to accept or reject, in whole or in part, the appropriation, apportionment and allocations of said Trust Fund, and the principal, income and increment thereof and all additions thereto or subtractions there-from. *329 If and when said budget or any part or parts thereof have been approved and accepted by the Trustee, the Trustee shall pay to the Beneficiary or on beneficiary's behalf at such time or times as the Trustee may deem proper, a part or all of the amount necessary to meet such authorized items and for the payment thereof and not otherwise; provided, however, that the Trustee shall not be responsible for the application of such expenditures by the Beneficiary or by any other persons. V The Beneficiary shall submit to the Trustee a copy of its annual financial statement of income and expenditures as verified by an accredited auditor, particularly as to such expenditures as may have been made from such appropriations as may have been made to it by the Trustee. The Trustee shall have the authority to examine not more than once each fiscal year all vouchers covering payments made from the appropriation made by it to the Beneficiary and any sums represented by said vouchers, which shall, in the judgment of the Trustee, not constitute expenditures by authority of Trustee for any one or more of the purposes set out in Article IV, hereof, shall not be a charge upon or the obligations of *330 the said Trust Fund, but shall constitute a debt of the Beneficiary forthwith due and owing to the Trustee and payable by it to the Trustee. VI Neither the Beneficiary, nor any other corporation or persons may or shall have any authority to charge or obligate said Trust Fund or any income or property of the Trustee, except its Board of Trustees. VII The Trustee may deduct from the Trust Fund for its services, only the necessary expenses for the administration of this trust, or as specifically designated by the Beneficiary. 207 VIII The Trustee hereby undertakes and agrees that the funds, monies and property acquired by assignments, bequests, donations, subscriptions, Thrift Stores, as hereinabove provided, shall be held, invested, re-invested, managed, supervised, administered and used upon the trusts and pursuant to the terms and conditions hereinabove. The trust shall continue until such time as the said principal sum of said service fund shall have become exhausted in the carrying on and advancement of the purposes set out in this trust, or until the purposes of the trust shall, in the judgment of the Trustee, have become no longer necessary or practical, when, *331 and in the later event, the Trustee or its successors in trust shall act in reference to the proceeds of said service fund for remaining in its hands for purposes as nearly analogous to the purposes now existing as, in the judgment of the Trustee, can then be found by it, to the end that the Disabled Veterans Service Foundation funds shall be, as long as any part of the principal thereof remains, a memorial to the Department of Illinois, Disabled American Veterans. It is further agreed that all the covenants, stipulations, promises and agreements in this Indenture contained, by or on behalf of the Trustee and the Beneficiary shall bind and be binding upon their respective successors and assigns, whether so expressed or not, and that upon any change of Trustee, none of the trusts terms or conditions of this Declaration of Trust shall be cancelled, altered, changed or modified. And lastly, the Trustee, party of the second part, hereby accepts the trust hereby created and in it reposed, and covenants faithfully and honestly to execute the same. Most of the twelve store leases executed during the years in issue initially specify the IllinoisDAV as lessee, but some of those leases *332 initially specify Operation Reclamation or DVSF as lessee. Ten of the leases were signed by Nicholas O. Isaacson in his capacity as chairman of Operation Reclamation or DVSF, a position he held throughout the years in question. On November 1, 1965, Welker entered into a revised employment contract with the IllinoisDAV and DVSF, which referred to Welker as an "employee" and IllinoisDAV and DVSF as the "employers." Under this contract, Welker served as manager of the Thrift Stores and received a salary plus a bonus based upon the stores' profits. The monthly Combined Retailers' Occupation Tax, Use Tax, and County and Municipal Retailers' Occupation Tax Return for August 1961 was filed by petitioner with the Illinois Department of Revenue under the name of DAV Thrift Stores, with Operation Reclamation, Inc., listed as owner. Petitioner filed subsequent monthly returns for 1962 through 1965 under the name Disabled American Veterans Thrift Stores. Employer's Quarterly Federal Tax Returns, Form 941, for 1961 and the first quarter of 1962 were filed with the district director of internal revenue, Chicago, Illinois, by petitioner under the name Disabled American Veterans - Operation *333 Reclamation and Redemption. Petitioner filed such returns for the second and third quarters of 1962 under the name of Disabled Veterans Service Foundation and for 1963, 1964, and 1965 under the name of Disabled American Veterans, Department of Illinois. On November 15, 1965, a Form 990, Return of Organization Exempt from Income, was filed with the district director of internal revenue, Chicago, Illinois, in the name of Department of Illinois, Disabled American Veterans and Related Organizations, signed by Nicholas O. Isaacson as chairman of the board of trustees. It presented three categories of financial information, namely, IllinoisDAV, DVSF, and DAV Thrift Stores, without indication that the DAV Thrift Stores were a subordinate organization of either of the other two entities. The Thrift Stores profit and loss statements reflect the following information: Alfred C.
Year ended
Gross
Net
Welker's
Petitioner's
Nov. 30
receipts
profit
share
share
1961
$ 221,195.18
$ 48,601.24
$24,300.62
$24,300.62
1962
418,641.91
86,393.21
43,196.61
43,196.60
1963
566,526.54
63,374.89
27,630.00
35,744.89
1964
888,677.76
119,461.44
59,730.72
59,730.72
1965
1,053,301.82
129,251.30
64,625.65
64,625.65
*334 The DVSF statements of financial condition show undistributed funds on hand for the respective years ended November 30, 1961 through November 30, 1964 and 208 June 30, 1965 as follows: $29,856.90; $78,390.44; $3,006.37; $72,186.74; and $69,382.00. During the years in question, separate financial statements were prepared for the Thrift Stores, for DVSF, and for the IllinoisDAV. The IllinoisDAV financial statements do not indicate that the Thrift Stores were owned or operated by the Department, but rather show only that the IllinoisDAV received funds from the Thrift Stores, usually in round amounts. On March 17, 1964, a form entitled "Registration of Charitable Trust" was filed with the attorney general of the State of Illinois on behalf of DVSF. On or about April 20, 1965, a "Registration Statement-Charitable Organization" was filed by DVSF with the attorney general of the State of Illinois. On or about March 18, 1964 and May 26, 1964, identical forms were filed by the IllinoisDAV. The DVSF filed forms entitled "Annual Report - Charitable Organization" with the attorney general of the State of Illinois for the periods December 1, 1963 - November 30, 1964, December 1, 1964 - *335 June 30, 1965, and July 1, 1965 - June 30, 1966. An identical form was filed by the IllinoisDAV for the year ended 1964 and for the period July 1, 1965 to June 30, 1966. DVSF and IllinoisDAV were separate and distinct entities during each of the years in question. Opinion The basic issue confronting us requires a factual determination as to whether Department of Illinois, Disabled American Veterans (IllinoisDAV), and petitioner, Disabled Veterans Service Foundation, Inc. (DVSF), are to be treated as one or two entities for Federal income tax purposes. Petitioner's primary contention is that IllinoisDAV and DVSF should be considered as functionally one organization, thereby precluding treatment of DVSF as a "feeder organization" as specified in section 502. [2] If DVSF is treated as an integral part of the IllinoisDAV, the Thrift Stores' income is not subject to the tax on "unrelated business taxable income" as defined in section 512, because section 511(a)(2) specifies that Part II of Subchapter F, dealing with unrelated business taxable income, is expressly inapplicable to organizations exempt from income tax under section 501(c)(4), [3] which section provided the basis for *336 the IllinoisDAV's tax exemption during the years in question (see footnote 1, supra). If petitioner is in fact a feeder organization within the meaning of section 502, its Thrift Stores' income would be subject to tax under the holdings of Veterans Foundation v. United States, 178 F. Supp. 234 (D. Utah 1959), aff'd 281 F. 2d 912 (C.A. 10, 1960), and Veterans Foundation, 38 T.C. 66 (1962), affirmed on another issue, 317 F. 2d 456 (C.A. 10, 1963). Those cases held that the exclusion of "the selling of merchandise, *337 substantially all of which has been received by the organization as gifts or contributions" from the definition of "unrelated trade or business" under section 513(a)(3) could not be read into section 502 and that the corporation operating the Thrift Stores in those cases was separate and distinct from the corporate entity which constituted the local State department of the Disabled American Veterans. Petitioner does not attack the precisional reading of the applicable provisions of the Internal Revenue Code reflected in these decisions (cf. University Hill Foundation 51 T.C. 548 (1969), on appeal (C.A. 9, July 14, 1969)). Rather, it seeks to distinguish those cases on the ground that it and the Disabled American Veterans, Illinois Department, were one and the same. Alternatively, petitioner maintains that it is entitled to exempt status in its own right pursuant to section 501 or that it is entitled, as a charitable trust, to an unlimited deduction under section 642(c) for amounts "paid or permanently set aside for a purpose specified in section 170(c)," which amounts include certain funds paid to DVSF service officers as salary or expenses. Respondent's position is *338 simply that DVSF was a feeder organization within the meaning of section 502. We turn first to a consideration of the threshold question of the relationship 209 between DSVF and IllinoisDAV. We are not unmindful that there are factors, particularly in the later years in question, which reflect an attempt to bring DVSF within IllinoisDAV. But the picture which emerges from the record is a murky one at best, due largely to the fact that the parties involved either failed to appreciate or blurred the significance of the IllinoisDAV and the DVSF structure and apparently did not implement their attempts at modification. Having thoroughly examined the evidence presented, we conclude, based upon the record as a whole, [4] that these two organizations were separate entities for tax purposes during the years in question. Our ultimate finding of fact reflects this conclusion. Our conclusion is based upon the following *339 considerations, among others: (1) At the outset, in 1959, it seems clear that DVSF was by design established as an entity separate and distinct from the IllinoisDAV and that it was so operated at least until late 1961. (2) On November 10, 1961, a trust agreement between DVSF and the IllinoisDAV was executed. We do not think that this agreement effectuated sufficient organizational changes to terminate the separate existence of DVSF for tax purposes. A reading of that instrument, against the background of its execution and implementation, indicates that its principal objective was merely to provide for closer control of DVSF by the IllinoisDAV in order to comply with the apparent requirements of the national DAV. By its terms, the trust agreement merely established an arrangement for budgetary and expenditure control over funds coming into the hands of DVSF as a means of insuring that the activities of the IllinoisDAV would be carried out. The DVSF, as trustee, was given complete power of decision as to the make-up of the IllinoisDAV budget for such activities and the expenditure of funds in implementation thereof. Such a role, rather than achieving unification of DVSF and *340 the IllinoisDAV, highlights the separate character of the two organizations. To be sure, the IllinoisDAV did for the first time gain the right to place four of its officers on the latter's board of directors and a veto power as to the remaining seven members of the board which was self-perpetuating. But the resulting control is not unlike that exercised by the sole shareholder of a corporation. It clearly is not sufficient, in and of itself, to accomplish unification. (3) The November 10, 1961 trust agreement is silent as to the transfer of the assets of the Thrift Stores to the IllinoisDAV. Throughout the period in question, the two organizations issued separate finanical statements with the operating data and the assets of the stores included as part of the statement of DVSF and not included in that of the IllinoisDAV. There is some evidence in the minutes of the DVSF board meetings and in the records of proceedings of the IllinoisDAV that, in the latter part of 1962, transfers of such assets to, and control of the operations of the Thrift Stores by, the IllinoisDAV were believed to have been achieved. But petitioner concedes on brief that the trust agreement was never amended *341 to provide for any transfer of assets [5] and there is no other probative evidence that such transfer occurred. Additionally, there are indications that, in 1962, the termination of the trust agreement and a merger of DVSF and the IllinoisDAV were discussed, but, here, again, there is no evidence that this was in fact accomplished. References in various documents to the supervisory role of the DVSF over the Thrift Stores, in our opinion, simply reflect a relationship to the activities of Welker and not a subservient agency relationship to the IllinoisDAV. We conclude that the record at most shows an intention to act rather than that the desired action was taken. Moreover, we note that ownership of the assets of the Thrift Stores by the IllinoisDAV would not in and of itself require acceptance of petitioner's conclusion. The DVSF could still act as an independent entity in conducting the operations with those assets, and this remains true even when the control of DVSF's board of directors by the IllinoisDAV is taken into account. *342 (4) The annual financial reports of the IllinoisDAV simply show DVSF and its predecessor, Operation Reclamation, as a source of receipts, usually in round amounts. Similarly, the DVSF and Operation 210 Reclamation statements show "contributions" to the IllinoisDAV. (5) The store leases display a random pattern in initially identifying the lessee, but it is significant that as late as 1965 DVSF was named as a lessee and that, even where the IllinoisDAV is initially identified as the lessee, the leases were usually signed by Isaacson in his capacity as chairman of the board of DVSF. Similarly the management contract with Welker, which was originally executed by Operation Reclamation as the owner of the Thrift Stores, was not replaced by a contract to which the IllinoisDAV was a party until November 1965. In listing the foregoing elements, we emphasize that no one element is conclusive and that there is other evidence in the record to support our ultimate conclusion which we see no purpose in elaborating upon in this opinion. In short, it appears that, in spite of the desire of certain members of the IllinoisDAV to shift the Thrift Store operations to the State department, *343 no coherent plan to achieve this result was formalized and no plan of a formal or informal nature was ever in fact implemented. Accordingly, we conclude that, at all times pertinent herein, the relationship between DVSF and the IllinoisDAV was that of two distinct entities and at no time did it achieve the status of unification or even that of principal (IllinoisDAV) - agent (DVSF). At the very least, petitioner has failed to sustain its burden of proof to the contrary. We must next consider petitioner's alternative contentions. First, it argues that if it is not treated for tax purposes as an integral part of the IllinoisDAV, it is entitled to a tax exemption in its own right under section 501. Petitioner has not stated under what subsection it claims such exemption, but we assume that such claim is premised upon section 501(c)(3) or (c)(4). We find this claim untenable. Initially, we note that the record herein contains only a most general and vague description of petitioner's substantive activities. With respect to any claim under section 501(c)(3), there is clearly insufficient evidence to sustain a holding that petitioner was a "charitable" organization or that, if it *344 were, it should be accorded an exclusion from unrelated business income by virtue of section 513(a)(3). The same can be said with respect to any claim for exemption under section 501(c)(4). The fact that the IllinoisDAV may have been so exempt does not automatically provide a comparable umbrella for petitioner, and our holding that petitioner and the IllinoisDAV were separate and distinct organizations precludes a finding that petitioner should be considered a subordinate unit of the IllinoisDAV and, through it, of the national DAV within the meaning of respondent's ruling dated June 24, 1942. Moreover, when the case is placed in this posture, we discern no relevant distinction between this case and Veterans Foundation v. United States, supra, and Veterans Foundation, supra.In the former case, the District Court adopted reasoning which this Court accepted in the latter instance, namely, that the taxpayer's principal claim to exemption in its own right was premised on the fact that its net income was payable to the Disabled American Veterans. The District Court quite properly rejected the taxpayer's contention, noting that the "ultimate destination of income test" was *345 no longer a tenable basis for exempt organization treatment. See H. Rept. No. 2319, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 380, 469; S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 483, 565-566. Petitioner further contends that if we determine that it is a taxable entity subject to tax, it is entitled as a trust to deduct amounts paid or permanently set aside for a charitable purpose pursuant to section 642(c). [6]
*346 Aside from the fact that there is a serious question whether this issue has been properly raised, [7] this contention is without merit. 211 To permit such deductions in the manner claimed would be in direct violation of section 681, which specifically provides that, "[in] computing the deduction allowable under section 642(c) to a trust, no amount otherwise allowable under section 642(c) as a deduction shall be allowable as a deduction with respect to income of the taxable year which is allocable to its unrelated business income for such year." Moreover, petitioner's argument ignores the fact that DVSF had two separate functions, (1) as the individual operator of the Thrift Stores and (2) as the trustee, and disburser of, funds on behalf of the IllinoisDAV. Even assuming that the net income from the operations of the Thrift Stores was "paid or permanently set aside for a purpose specified in section 170(c)," [8] those funds would constitute the principal of the trust and the amounts which petitioner claims would be at most an offset against the income derived from these funds. Any other conclusion would enable a feeder organization to avoid the impact of section 502 merely *347 by assuming a disbursing function on behalf of its charitable parent or sponsoring organization. Cf. Crosby Value & Gage Co., 46 T.C. 641 (1966), affd. 380 F. 2d 146 (C.A. 1, 1967). In its petition, the petitioner contested respondent's determination of taxable status but did not specifically place in issue respondent's computation of taxable income. At trial, petitioner filed an amendment to the petition which placed in issue the failure to allow an investment credit, the inclusion of donations in income, and the disallowance of certain payments to service officers as expenses. On brief, petitioner makes no mention of the first two items, *348 and we assume that any contentions with respect to those items have been abandoned. As to the third item, petitioner merely claims that amounts in excess of those allowed by respondent are deductible under section 642(c) as amounts "used exclusively for * * * charitable * * * purposes." As we have indicated, section 642(c) is inapplicable, and we must accordingly reject this contention. Decision will be entered for the respondent. Footnotes
1. All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended. Respondent conceded at the trial that the Disabled American Veterans, Department of Illinois, was included within his ruling that the national organization of the Disabled American Veterans was exempt under section 501(c)(4)↩ and that such ruling was outstanding and unrevoked during the years in issue herein.
2. SEC. 502. FEEDER ORGANIZATIONS. An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501↩ from taxation. For purposes of this section, the term "trade or business" shall not include the rental by an organization of its real property (including personal property leased with the real property). 3. Section 501(c)(4)↩ organizations are now subject to the tax on unrelated business income. Tax Reform Act of 1969, 83 Stat. 487, sec. 121 (a)(1)(A).
4. Certain documents were, according to the stipulation of the parties, received in evidence solely for the purpose of establishing that the documents existed and not for the truth of their contents. Our evaluation of the record has carefully observed such restriction.↩
5. Certain amendments to the trust agreement were suggested in April 1963 by the judge advocate of the national DAV, but the record is unclear as to whether these amendments were ever adopted. In any event, these amendments would not affect our ultimate conclusion.↩
6. SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS. * * * (c) Deduction for Amounts Paid or Permanently Set Aside for a Charitable Purpose. - In the case of an estate or trust (other than a trust meeting the specifications of subpart (B)) there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, * * *↩
7. The only possible applicable statement in the pleadings is the general assertion that "the Commissioner erred in determining that petitioner had taxable income in its fiscal years ending November 30, 1961, 1962, 1963, 1964, and 1965." ↩
8. Section 170(c)(3) specifies "[a] post or organization of war veterans." With respect to the remaining conditions of section 642 (see footnote 6, supra), we note that we have held that the record will not sustain a finding of the "charitable" nature of petitioner's activities.↩