STONEGATE OF BLACKSBURG, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stonegate of Blacksburg, Inc. v. Commissioner
Docket No. 4264-70.
United States Tax Court
T.C. Memo 1974-213; 1974 Tax Ct. Memo LEXIS 106; 33 T.C.M. (CCH) 956; T.C.M. (RIA) 74213; August 20, 1974, Filed. LeRoy Katz, for the petitioner. J. Doyle Tumbleson, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge:* Respondent *109 determined the following deficiencies and additions to petitioner's Federal income taxes: Additions Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
1966
$13,977.03
$3,494.26
$698.85
1967
1,461.44
365.36
73.07
The issues presented for decision are as follows: (1) Whether petitioner's taxable year was a fiscal year ending March 31 or a calendar year during the years in issue; (2) Whether petitioner was an electing small business corporation for the period from April 1, 1967 through March 31, 1968 pursuant to Subchapter S; (3) Whether certain payments made by petitioner to its shareholders constituted deductible travel expenses; (4) Whether the cost to be allocated to lots sold by petitioner during the years in issue was properly determined by respondent; and (5) Whether petitioner is subject to the additions *110 to tax prescribed in sections 6651(a) and 6653(a). Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is a Virginia corporation which was organized on April 23, 1963 and went by the name of Classmate Apartment Corporation until February 25, 1965. Its principal place of business at the time it filed the petition herein was in Pulaski, Virginia. Of the original organizers and shareholders, only Paul C. Roop (hereinafter "Roop") remained after the name change. During the years in issue, Roop was petitioner's president. In addition to his activities for petitioner, Roop was active as a real estate developer in several partnerships and corporations. T. Rodman Layman, an attorney, served as petitioner's vice president and John W. Layman, a mathematics teacher at Virginia Polytechnic Institute, was secretary-treasurer. Petitioner issued no stock and remained inactive until the early part of 1965. By deed dated February 3, 1965, petitioner purchased 29.460 acres of unimproved land. During 1965 and the early part of 1966, petitioner improved the land and subdivided *111 it in preparation for sale. On April 7, 1965, petitioner borrowed in excess of $100,000 in order to provide funds to finance the purchase of the property, costs of development, and related expenses. Petitioner began the sale of lots in the early part of 1966.
Prior to June 25, 1969, no income tax returns were filed by petitioner. In the latter part of 1968, an Internal Revenue Agent requested Roop to have income tax returns prepared for petitioner for the taxable years 1963 through 1967. Roop then consulted a tax return preparer, who prepared: (1) a corporate income tax return (Form 1120) for the period April 1, 1966 through March 31, 1967 and (2) a small business corporate income tax return (Form 1120-S) for the period April 1, 1967 through March 31, 1968. These returns were delivered to the Internal Revenue Agent for examination in late 1968 or early 1969. By letter dated March 21, 1969, Roop requested return of the two returns and on March 25, 1969, the agent delivered them to petitioner's counsel. Petitioner next consulted a firm of Certified Public Accountants, who prepared corporate income tax returns for: (1) the calendar year 1965, (2) the period from January 1, 1966 through *112 March 31, 1966, and (3) the period from April 1, 1966 through March 31, 1967. Petitioner filed these three returns with the district director of internal revenue in Richmond, Virginia, on June 25, 1969. The record herein contains the following two letters purportedly written and mailed by petitioner at or about the dates thereof: "April 15, 1966 District Director Internal Revenue Service Richmond, Virginia
Re: Stonegate of Blacksburg, Inc. Gentlemen: The above corporation, successor in 1965 to Classmate Apartment Corporation, a 1963 corporation which never conducted any business, has requested that I inform you that it desires to follow the fiscal year period of April 1 - March 31 selected by Classmate at the time of its inception, if not objectionable to you.Stonegate began doing business for the first time in 1966 and you should shortly receive its return. Information of the fiscal year period for accounting purposes of Stonegate has been sent to the Director of the Virginia Department of Taxation on each of the last two years, but I did not recall your having ever been notified. Yours very truly, T. Redman Layman Counsel and Registered Agent Stonegate *113 of Blacksburg, Inc." [2]
"July 15, 1966 District Director Internal Revenue Service Richmond 15, Virginia
Re: Stonegate of Blacksburg, Inc. Dear Sir: This corporation has elected to use the period April 1 - March 31, as their fiscal year. The corporation is now active in the development of Stonegate of Blacksburg Subdivision and as of March 31, 1966 had not completed a real estate transaction. The corporation will file a tax return for the period of April 1, 1966 - March 31, 1967 prior to July 15, 1967. Yours very truly, T. Rodman Layman
Registered Agent" The record also contains a Form 2553 (Election by Small Business Corporation) bearing a date of March 10, 1967 and purportedly electing Subchapter S status effective April 1, 1967. Annual Accounting Period The first issue involves the question whether petitioner is entitled to use a March 31 fiscal year for tax purposes. The governing provisions are contained in section 441. [3] Initially, petitioner seems to contend that it was inactive at least until April 1, 1966, so that the first return *114 which it was required to make was for the fiscal year ended March 31, 1967. Under section 441(c), an annual accounting period is determined by "the annual period on the basis of which the taxpayer regularly computes his income in keeping his books". See also section 1.441-1(c), Income Tax Regs. The evidence herein contains no indication that such records were kept on a March 31 fiscal year basis. Cf. Great West Printing Co. v. Commissioner, 60 F.2d 749 (C.A. 8, 1932); Albert L. Dougherty, 60 T.C. 917, 932-933 (1973). Not only were no books or records offered in evidence, but petitioner submitted no documents such as a balance sheet or profit and loss statement based on a fiscal year ending March 31. Moreover, petitioner called both its secretary-treasurer and independent accountant as witnesses and neither of them testified that petitioner had adopted a March 31 accounting period. Also absent from the record are any minutes of petitioner's board of directors' meetings containing any reference to such accounting period. In fact, the only *115 evidence directly belies petitioner's contention. Its first return, filed June 25, 1969, was for the calendar year 1965. *116 Petitioner, at trial and on brief, has implied that more books and records exist than were shown to respondent's agent and us, for he has argued that "[at] no time did the agent inquire whether additional records were available for examination nor did he request that additional records from the secretary be brought to him for examination." Petitioner, however, has not introduced the "additional records" into evidence, and where, as here, he has the burden of proof and does not do so, we must presume that no such records exist. Wichita Terminal Elevator Co., 6 T.C. 1158, 1165, (1946), affd. 162 F.2d 513 (C.A. 10, 1947). Moreover, section 1.6012-2(a) (2), Income Tax Regs., provides: A corporation in existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. * * * If a corporation has *117 received a charter but has never perfected its organization and has transacted no business and has no income from any source, it may upon presentation of the facts to the district director be relieved from the necessity of making a return. [Emphasis supplied.] The record herein shows that petitioner purchased land and engaged in financing and other activities during 1965 and early 1966. [4] Such elements, absent evidence of compliance with the provision that relief be obtained from the district director in respect of the necessity of making a return, preclude a determination that petitioner was not required to file any return for any period prior to April 1, 1966. Petitioner's principal argument is that, in any event, it changed its annual accounting period to one ending March 31 by virtue of the purported letters bearing the dates April 15 and July 15, 1966. The applicable statutory provision is section 442.[5] The important fact is that, even assuming *118 without deciding that such letters were in fact filed (as to which we have serious doubts), [6] they were insufficient to enable petitioner to meet the requirements of that section. In the first place, much of what we have previously said is equally applicable to this argument. The hard fact is that petitioner has not satisfied the critical test, namely, that its March 31 fiscal year was "actually used in the business and shown in the books." See Great West Printing Co. v. Commissioner, supra, 60 F.2d at 751. *119 In the second place, petitioner acknowledges that it never received the prior approval of the Commissioner as required by section 442. Moreover, it is obvious that the purported letter of April 15, 1966 did not constitute a sufficient statement under the provision of section 1.442-1(c), [7] Income Tax Regs., which permits a change of accounting period without prior approval under certain circumstances. Petitioner's argument that it substantively complied with the conditions which dispense with the Commissioner's approval misses the mark. In light of the fact that section 442 by its very terms requires such approval, it is not unreasonable for the Commissioner to require that he be given the necessary information in the actual statement required by section 1.442-1(c) of the regulations, i.e., that the provisions of the regulations be strictly complied with. Cf. East Coast Motors, Inc., 35 B.T.A. 212, 216-217 (1936). In this connection, we note that the only evidence of such substantive compliance is contained in the late tax returns filed by petitioner - evidence which falls far short of proof of the facts purportedly shown on those returns. *120 Nor did the return for the period January 1, 1966 through March 31, 1966 together with an accompanying statement of change in its annual accounting period constitute compliance with section 1.442-1(c) (1) of the regulations. The fact that the return and statement were not filed until June 25, 1969 runs afoul of the time requirement of that regulation. We conclude that petitioner was required to report for Federal income tax purposes on the basis of a calendar year accounting period. In light of our reasoning, we see no need to delve into the question whether the file of bills, contracts, invoices, and letters, apparently maintained by petitioner, constituted "books" within the meaning of section 441(g) (1) and the regulations thereunder. See Louis M. Brooks, 6 T.C. 504 (1946); Max H. Stryker, 36 B.T.A. 326 (1937). Subchapter S Status The second issue is whether petitioner is entitled to be treated as a small business corporation, pursuant to sections 1371 through 1379, for the period of April 1, 1967 through March 31, 1968. Section 1372[8] permits a qualifying corporation to elect not to be subject to Federal income taxes if it files an election *121 "during the first month" of any taxable year or "at any time during the month preceding such first month." The statutory requirement is demanding and explicit. See William Pestcoe, 40 T.C. 195, 198 (1963). *122 Essentially, the parties herein have "squared-off" on the question of whether petitioner ever mailed the election, for respondent claims he never received it. Petitioner argues that it filed the small business corporation election on March 10, 1967 for the taxable year which it claims began on April 1, 1967. It further argues that it filed a Small Business Corporation Income Tax Return for that year on June 25, 1969, along with a copy of the election. Respondent denies receipt of the election, either the original or the copy, or the return. As we have already held that petitioner was a calendar year taxpayer, not entitled to file on the basis of a fiscal year other than the calendar year, we eschew the question of whether the election was mailed by petitioner and received by respondent. The election (Form 2553) purportedly filed by petitioner and submitted into evidence is dated March 10, 1967. Since petitioner's taxable year was the calendar year during 1966 and 1967, this election could not have been timely filed. As a calendar year taxpayer, section 1372(c) (1) required petitioner to file in December 1966 or January 1967 for the taxable year beginning January 1, 1967. *123 Therefore, we hold that it is not entitled to be treated as a small business corporation for any parts of 1966 or 1967. Simons v. United States, 208 F. Supp. 744 (D. Conn. 1962); Thos E. Bone, 52 T.C. 913, 919 (1969); Joseph W. Fledman, 47 T.C. 329, 332 (1966). Travel Expenses The third issue is whether certain payments by petitioner constituted deductible travel expenses. Each of petitioner's five equal shareholders was paid an equal amount in 1966 and 1967 which petitioner sought to deduct as reimbursements for travel expenses incurred in connection with corporate business. Respondent disallowed these deductions. Since petitioner did not consider this issue in either its original or reply briefs, we consider it to have been conceded. Costs of Lots The next issue presented relates to the cost of lots sold by petitioner in 1966 and 1967. When he determined petitioner's taxable income for these years, respondent determined the cost of lots sold by petitioner as $32,469.97 and $31,109.54, respectively.Petitioner contends this allocation is incorrect and arbitrary and that the proper cost figures were supplied by its president. *124 The parties agree that the cost of the entire 29.460 acres was $65,000, which must be allocated between the 52 lots offered for sale and 3 tracts which were left over. Respondent allocated a greater portion of the $65,000 to these tracts than did petitioner. The only evidence presented by petitioner on this issue was the uncorroborated testimony of Roop, who testified that there were swamp and drainage problems with these tracts. No documentation of this testimony was forthcoming. Thus, we are constrained to hold that petitioner has failed to carry its burden of proof and respondent's determination on this issue is sustained. Additions to Tax The final issue is whether petitioner is liable for additions to tax pursuant to sections 6651(a) and 6653(a). Since petitioner concedes on brief that it is subject to the 5-percent addition under section 6653(a) for negligence or intentional disregard of rules and regulations, the only question is whether petitioner has shown that its failure to file timely returns for 1966 and 1967 was "due to reasonable cause and not due to willful neglect" within the meaning of section 6651(a).[9] If that is the case, the 25-percent additions *125 to tax are unwarranted. Petitioner has the burden of proof on this issue. Electric & Neon, Inc., 56 T.C. 1324, 1342 (1971); C. Fink Fischer, 50 T.C. 164, 177 (1968); Rule 142, Tax Court Rules of Practice and Procedure.
*126 We do not find petitioner's cause for its tardiness to be reasonable. Despite petitioner's plea to the contrary, the evidence does not show that its officers were sufficiently unfamiliar with corporate and tax matters to excuse the filing of returns. Roop was a real estate developer involved in several partnerships and corporations. Petitioner's vice-president was an attorney and its secretary-treasurer was a college teacher. Moreover, ignorance of the necessity of filing a tax return will not of itself relieve a taxpayer of the section 6651(a) addition. Estate of Henry P. Lammerts, 54 T.C. 420, 445 (1970), affirmed on this issue, 456 F.2d 681 (C.A. 2, 1972). Petitioner began selling lots in early 1966, yet it filed no returns until June 25, 1969. There is no evidence in the record that petitioner even attempted to prepare a return until late 1968, after respondent's agent requested that Roop have returns prepared. The only excuse assigned by petitioner for the delay were that the tax preparer it employed retained its records and that it filed a request *127 for an extension of time for filing for the period ending March 31, 1967. As to the former contention, petitioner has submitted no evidence to lead us to conclude that the tax preparer caused any such delay. To the contrary, the preparer was not even consulted until late 1968, and we are satisfied that the state of petitioner's records made the preparation of its returns a long and arduous task. The facts herein fall far short of establishing that petitioner exercised the "ordinary business care and prudence" required by the regulations. Section 301.6651-1(c) (1), Procedure and Administration Regs. As to the latter contention, petitioner's request for an extension was denied by letter dated September 8, 1967. We fail to see any facts relative to this extension request and denial which would supply a reasonable cause for petitioner's failure to file for 1966 and 1967 until June 25, 1969. See Veterans Foundation, 38 T.C. 66, 75 (1962), affd. 317 F.2d 456 (C.A. 10, 1963). Thus, we hold that respondent properly determined the 25-percent addition since petitioner has not shown a reasonable cause for its failure to file. Electric & Neon, Inc., supra; *128 Rogers Hornsby, 26 B.T.A. 591, 593 (1932). Decision will be entered for the respondent. Footnotes
*. Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned on May 10, 1974 from Judge Graydon G. Withey, who heard the case, to Judge Theodore Tannenwald, Jr.↩, for disposition. 1. All statutory references are to the Internal Revenue Code of 1954. ↩
2. No independent evidence that the Virginia Department of Taxation was notified has been presented to us. ↩
3. SEC. 441. PERIOD FOR COMPUTATION OF TAXABLE INCOME. (a) Computation of Taxable Income. - Taxable income shall be computed on the basis of the taxpayer's taxable year. (b) Taxable Year. - For purposes of this subtitle, the term "taxable year" means - (1) the taxpayer's annual accounting period, if it is a calendar year or a fiscal year; (2) the calendar year, if subsection (g) applies; or (3) the period for which the return is made, if a return is made for a period of less than 12 months. (c) Annual Accounting Period. - For purposes of this subtitle, the term "annual accounting period" means the annual period on the basis of which the taxpayer regularly computes his income in keeping his books. (d) Calendar Year. - For purposes of this subtitle, the term "calendar year" means a period of 12 months ending on December 31. * * * (g) No Books Kept; No Accounting Period. - Except as provided in section 443 (relating to returns for periods of less than 12 months), the taxpayer's taxable year shall be the calendar year if - (1) the taxpayer keeps no books; (2) the taxpayer does not have an annual accounting period; or (3) the taxpayer has an annual accounting period but such period does not qualify as a fiscal year. ↩
4. The parties have stipulated that the first sale of lots was made in the early part of 1966, and petitioner, on whom the burden of proof rested, submitted no evidence that there were no sales prior to April 1, 1966. ↩
5. SEC. 442.CHANGE OF ANNUAL ACCOUNTING PERIOD. If a taxpayer changes his annual accounting period, the new accounting period shall become the taxpayer's taxable year only if the change is approved by the Secretary or his delegate. For purposes of this subtitle, if a taxpayer to whom section 441(g) applies adopts an annual accounting period (as defined in section 441(c)↩) other than a calendar year, the taxpayer shall be treated as having changed his annual accounting period. 6. The record herein is devoid of any explanation as to why, if the April 15 letter was in fact filed, petitioner found it necessary to file the July 15 letter (which, incidentally, was untimely under section 1.442-1(b), Income Tax Regs.↩). 7. Section 1.442-1(c) in effect during the years in issue provides in pertinent part as follows: Special rule for certain corporations. (1) A corporation * * * may change its annual accounting period without the prior approval of the Commissioner if all the conditions in subparagraph (2) of this paragraph are met, and if the corporation files a statement with the district director of internal revenue with whom the returns of the corporation are filed at or before the time (including extensions) for filing the return for the short period required by such change. The statement shall indicate that the corporation is changing its annual accounting period under paragraph (c) of § 1.442-1 and shall contain information indicating that all of the conditions in subparagraph (2) of this paragraph have been met. (2) The provisions of this paragraph do not apply unless all of the following conditions are met: (i) The corporation has not changed its annual accounting period at any time within the ten calendar years ending with the calendar year which includes the beginning of the short period required to effect the change of annual accounting period; (ii) The short period required to effect the change of annual accounting period is not a taxable year in which the corporation has a net operating loss as defined in section 172; (iii) The taxable income of the corporation for the short period required to effect the change of annual accounting period is, if placed on an annual basis (see paragraph (b) (1) (i) and (ii) of § 1.443-1), 80 percent or more of the taxable income of the corporation for the taxable year immediately preceding such short period * * *. * * * ↩
8. SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. (a) Eligibility. - Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation - (1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or (2) on the day on which the election is made, if the election is made after such first day, consent to such election. * * * (c) Where and How Made. - (1) In general. - An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations. * * * ↩
9. The requirements for timely filing of income tax returns for petitioner are contained in section 6072(b). Section 6651(a) (1) provides, in pertinent part, as follows: SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. - In case of failure - (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate * * *. ↩